**Leonard NIKOLAI, Appellant,**

v.

**George J. STRATE, Brice A. Tondre, Madden and Strate, P.C., and Strate and Tondre, P.C., Appellees.**

No. 2–94–289–CV.

Court of Appeals of Texas, Fort Worth.

April 11, 1996.

Rehearing Overruled June 13, 1996.

William L. Smith, Jr., Argyle, for Appellant.

Cowles & Thompson, P.C. and Charles T. Frazier, Jr. and Gregory J. Lensing, Dallas, for Appellees.

Before DAUPHINOT and RICHARDS, JJ., and JOE L. DRAUGHN, J. (Sitting by Assignment).

## OPINION

RICHARDS, Justice.

In this appeal we must decide if a Texas court can exercise personal jurisdiction over a Colorado attorney being sued by a Texas resident for malpractice stemming from a Colorado lawsuit where the Colorado attorney has been licensed to practice law in Texas since 1967 and has handled about fifteen cases in Texas over the past ten years. The trial court ruled that it did not have personal jurisdiction over the Colorado attorney, his partner, and their professional corporation. We affirm in part and reverse in part, holding that a Texas court has personal jurisdiction over the Colorado attorney and his professional corporation, but not over the partner.

### Background

Appellant Leonard Nikolai, a Texas resident since 1981, was sued in Colorado state court in 1987 by April Green, the eighteen-year-old niece of his former wife, for allegedly sexually molesting her in 1981. Before moving to Texas in 1981, Nikolai, an airline pilot, had lived in Colorado.

Nikolai notified his liability insurers, Farmers Alliance Mutual Insurance Company (Farmers) and United Services Automobile Association Properties Fund, Inc. (USAA), of the suit. USAA retained the Colorado law firm Madden & Strate, P.C. (now named Strate & Tondre, P.C.) to defend Nikolai, and Farmers retained Eric Peterson, a Colorado attorney, for Nikolai. But because both insurers notified Nikolai that it might dispute its defense and coverage obligations, Nikolai also retained a Texas attorney, Mike Lipscomb.

Although appellee George Strate initially assumed responsibility of Nikolai's case, Bar-

bara Larson, an associate, primarily handled the case under the supervision of appellee Brice Tondre. Strate and Tondre are shareholders in Strate & Tondre, P.C.

After consultation with his attorneys, in September 1987 Nikolai filed for bankruptcy in Texas to ease his financial burdens. His attempt to remove the Colorado suit to the bankruptcy court in Texas was, however, ultimately unsuccessful. After remand, Green filed a complaint in the bankruptcy court against Nikolai seeking to except from discharge Green's sexual assault claim against Nikolai. In response, Nikolai filed a counterclaim against Green alleging malicious prosecution or abuse of process.

In April 1988, Farmers informed Nikolai that it was denying coverage and withdrawing its defense. Nikolai and USAA then modified their contract to provide that Nikolai would waive any indemnification claim against USAA in return for USAA's continued funding of his defense in accordance with his policy. This was done because Nikolai desired unqualified exoneration, not a settlement of any kind. In 1989, Tondre and Madden & Strate filed suit in Colorado state court for Nikolai against Green and Green's attorney for tortious interference with contract and against Farmers for breach of its insurance policy and bad faith. The suit was undertaken by Tondre under a contingency fee agreement.

The Colorado suit against Nikolai was set for trial on October 17, 1989. At a mandatory settlement conference held on October 11, 1989, at which Strate appeared in place of Tondre, a settlement of both Green's suit and Nikolai's suit was reached. The parties agreed that Green would dismiss all of her claims against Nikolai and that Nikolai would dismiss all of his claims against Green. USAA agreed to pay Green $5,000, and Farmers, who had reappeared on Nikolai's behalf because of a change in Colorado insurance law, agreed to pay Green $25,000. Because of the settlement, the bankruptcy court later dismissed Nikolai's counterclaim against Green in the bankruptcy.

Green's suit was dismissed on November 13, 1989, and Nikolai's claims against Green were dismissed the next day. Nikolai's claims in his suit against the other defendants were later resolved in 1992.

## Procedural History

Nikolai filed this suit against USAA and appellees Strate, Tondre, and Strate & Tondre, P.C. in July 1993, alleging breach of contract, deceptive trade practices, negligence, gross negligence, fraud, and breach of fiduciary duty. Strate, Tondre, and Strate & Tondre, P.C. filed a special appearance challenging the exercise of personal jurisdiction over them. In support, Strate filed an affidavit, while Tondre testified at an evidentiary hearing on the special appearance.

The trial court sustained the special appearances of Strate, Tondre, and Strate & Tondre, P.C. At Nikolai's request, the trial court entered findings of fact and conclusions of law, but only as to Tondre. The trial court severed the claims against Strate, Tondre, and Strate & Tondre, P.C., and this appeal followed.

## Overview of Personal Jurisdiction

■ A Texas court may exercise personal jurisdiction over a nonresident if two conditions are met. First, the Texas long arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990).

■ The long arm statute extends personal jurisdiction to nonresident defendants "doing business" in Texas, where the "business" conducted by the nonresident in Texas is continuous and systematic, or where litigation arises out of or is related to the "business" conducted by the nonresident defendant in Texas. *See O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex.1966). The Texas long arm statute provides:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to per-

form the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents directly or through an intermediary located in this state, for employment inside or outside this state.

TEX.CIV.PRAC. & REM.CODE. § 17.042 (Vernon 1986).

The Texas Supreme Court has held that the broad language of the Texas long arm statute's "doing business" requirement allows the statute to reach as far as the federal constitution permits. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991); *Schlobohm,* 784 S.W.2d at 357.

To satisfy due process, the plaintiff must overcome two hurdles to justify the exercise of personal jurisdiction over a non-resident defendant. First, the plaintiff must show that the nonresident defendant has purposefully established "minimum contacts" with Texas. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945); *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 105, 107 S.Ct. 1026, 1028, 94 L.Ed.2d 92, 100 (1987). Second, the plaintiff must show that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102; *Schlobohm,* 784 S.W.2d at 357.

The United States Supreme Court has extensively developed the first prong of the test, the minimum contacts analysis. An essential goal of the minimum contacts test is to protect the nonresident defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980). This goal requires a determination whether the nonresident defendant has purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 541–42 (1985). This "purposeful availment" requirement en-

sures that a nonresident defendant will not be haled into a jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or a third person." *Id.* at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404, 412–13 (1984); *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567, 62 L.Ed.2d at 502. Furthermore, nonresident defendants must have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181–82, 85 L.Ed.2d at 540–41. Some overt act is required by a nonresident defendant to subject it to the possibility of being haled into a foreign court.

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Id.* at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41 (citations omitted).

The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant that create a substantial connection with the foreign state. *Id.* at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 541–42. The substantial connection between the nonresident defendant and the forum state necessary for a finding of minimum contacts must come about by action or conduct of the nonresident defendant purposefully directed toward the forum state. *Id.*

Isolated contacts by a nonresident defendant with the forum state or its residents are not sufficient for a court to assume personal jurisdiction over that nonresident defendant. *Id.* at 475 n. 18, 105 S.Ct. at 2184 n. 18, 85 L.Ed.2d at 543 n. 18. For there to be the necessary minimum contacts for jurisdictional purposes, there must be continuing contacts.

The United States Supreme Court has refined the minimum contacts analysis into specific and general jurisdiction. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8, 80 L.Ed.2d at 411 n. 8; *World–Wide Volkswagen,* 444 U.S. at 293–94, 100 S.Ct. at 565–66, 62 L.Ed.2d at 498–99; *Guardian Royal Exch.,* 815 S.W.2d at 227. But the contact must have resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873, 80 L.Ed.2d at 412–13; *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567, 62 L.Ed.2d at 502. Furthermore, the nonresident defendant's activities must have been "purposefully directed" to the forum and the litigation must result from alleged injuries that "arise out or relate to" those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872, 80 L.Ed.2d at 410–11; *Schlobohm,* 784 S.W.2d at 357.

General jurisdiction may be asserted when the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state but there are *continuous and systematic contacts* between a nonresident defendant and the forum state. *Helicopteros,* 466 U.S. at 414–16, 104 S.Ct. at 1872–73, 80 L.Ed.2d at 410–11; *Schlobohm,* 784 S.W.2d at 357. The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of *substantial activities* in the forum state. *Guardian Royal Exch.,* 815 S.W.2d at 228; *Schlobohm,* 784 S.W.2d at 357.

Once it has been determined that a nonresident defendant has purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with "fair play and substantial justice." *Asahi,* 480 U.S. at 113–15, 107 S.Ct. at 1032–34, 94 L.Ed.2d at 105–07; *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. These factors include (1) the burden on the defendant, (2) the interest of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498; *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543; *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1032–33, 94 L.Ed.2d at 105. But regardless of these factors, it must first be established that the nonresident defendant purposely established minimum contacts with the forum state. Even if the nonresident defendant has purposely established minimum contacts with the forum state, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44.

Texas has devised its own formula to ensure compliance with the federal constitutional standard for exercising personal jurisdiction over a nonresident defendant. First, the nonresident defendant must have purposefully established minimum contacts with Texas. *Guardian Royal Exch.,* 815 S.W.2d at 230. In analyzing minimum contacts, it is not the number, but rather the quality and nature, of the nonresident defendant's contacts with the forum state that is important. *Texas Commerce Bank Nat'l Ass'n v. Interpol '80 Partnership,* 703 S.W.2d 765, 772 (Tex.App.—Corpus Christi 1985, no writ). There must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *Guardian Royal Exch.,* 815 S.W.2d at 230. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's

**236**

contacts with Texas. When general jurisdiction is alleged, there must be *continuous and systematic contacts* between the nonresident defendant and Texas. General jurisdiction requires a showing of *substantial activities* by the nonresident defendant and Texas, and the minimum contacts inquiry is broader and more demanding. *Guardian Royal Exch.,* 815 S.W.2d at 230; *Schlobohm,* 784 S.W.2d at 357.

Finally, the assumption of personal jurisdiction must comport with "fair play and substantial justice." The factors for making this determination are the same as the factors in the federal due process test. *Guardian Royal Exch.,* 815 S.W.2d at 231.

In applying the jurisdictional formula to a particular case, the facts must be carefully weighed and mechanical application of any test, including the Texas formula, must be avoided. *Id.; Schlobohm,* 784 S.W.2d at 358; *see Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44.

**Standard of Review**

In three points of error, Nikolai claims that the trial court erred in granting the special appearances of Tondre, Strate & Tondre, P.C., and Strate, respectively. In a special appearance, the nonresident defendant has the burden of proof to negate all bases of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985). On appeal, the appellate court reviews all the evidence on the jurisdictional question. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.— Dallas 1993, writ denied). But the correct standard of review of the evidence is factual sufficiency, not a de novo review. *Id.* The appellate court reviews the trial court's conclusions of law to determine their correctness. *Id.*

**Point of Error One**

As noted above, the trial court entered findings of fact and conclusions of law on Tondre's special appearance. Because Nikolai does not challenge any of the trial court's findings of fact, those findings are binding on this court "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986).

The trial court made the following findings of fact:

1. Tondre is a resident of, and has been domiciled in, the state of Colorado since 1984.

2. Tondre does not maintain a place of business in Texas.

3. Tondre is not required to maintain, and does not maintain, an agent for service of process in Texas.

4. Tondre does not own any real or personal property in Texas.

5. Tondre has not entered into any contract with Plaintiff that contemplated performance, in whole or in part, in Texas.

6. Tondre has not committed any tort, in whole or in part, in Texas.

7. Tondre first came in contact with Plaintiff after Plaintiff had been sued by April Green in Denver, Colorado, when one of Plaintiff's insurance carriers, USAA, through its Colorado Springs, Colorado office, retained Tondre's law firm to defend Plaintiff.

8. Throughout his representation of Plaintiff in the April Green lawsuit, Tondre's law firm sent its bills to USAA's Colorado Springs, Colorado office, and those bills were paid by USAA.

9. Plaintiff subsequently retained Tondre's law firm to represent him in a lawsuit that he filed against Farmer's Alliance and other defendants in Denver, Colorado.

10. In connection with the two Denver, Colorado lawsuits, Tondre never traveled to Texas and no depositions were ever taken in Texas.

11. Tondre was not retained to, and did not, represent Plaintiff in connection with the bankruptcy action that Plaintiff filed in Texas.

12. The nature of Tondre's contacts with Plaintiff's Texas bankruptcy action was that, when Plaintiff's bankruptcy lawyers requested information about the Colo-

rado lawsuits, Tondre's law firm would provide that information.

13. All of Tondre's contacts with Plaintiff took place while Tondre was in Colorado.

14. While Tondre is licensed to practice law in Texas, over the last 8½–9 years, he has spent, on the average, less than 2% of his time practicing law in Texas.

15. Of the approximately 15 Texas cases that Tondre has been involved in . . . over the past 8½–9 years, only 2 of those cases are currently actively pending (2 other cases have been settled, but the dismissal orders have not been signed). With respect to those two pending cases, Tondre's role is not as lead counsel for his clients, but as special counsel who oversees the handling of the case by the insurance defense counsel.

16. Of the trips that Tondre has made to Texas in the last 8½–9 years, many have involved non-Texas cases where witnesses located in Texas were deposed.

17. Tondre did not purposefully seek out the representation in any of the approximately 11 Texas cases in which he provided some level of representation after leaving Texas.

18. Tondre is not now, and has not since 1984 been, seeking to provide legal representation in Texas.

19. The October 11, 1989 settlement conference, which forms the basis for Plaintiff's claims against Tondre in this case, took place in Denver, Colorado.

20. There were eight (8) individuals present at the October 11, 1989 settlement conference, and every one of those individuals were and are residents of Colorado.

21. None of the Plaintiff's claims in this lawsuit arise from, or are connected with, any act or transaction taking place in Texas.

22. Tondre's post–1984 contacts with the state of Texas have not been continuing and systematic; rather, they have been sporadic, attenuated, and fortuitous.

23. Of the 14 key fact witnesses to Plaintiff's claims against Tondre, 12 are Colorado residents. Of those 12 Colorado resident witnesses, 10 cannot be compelled to come to Texas to testify.

24. Plaintiff concede[s], and the Court finds that, if this case were to proceed in Texas, Colorado substantive law would have to be applied since Colorado has the more significant interest in Plaintiff's claims against Tondre.

25. The burden for Tondre to litigate in Texas is greater than the burden for Plaintiff to litigate in Colorado, because both Plaintiff and his wife are pilots for major airlines and can commute between Dallas and Denver with ease for a nominal charge of about ten dollars ($10.00) per trip.

26. There is no basis for the State of Texas to exercise specific personal jurisdiction over Tondre.

27. There is no basis for the State of Texas to exercise general personal jurisdiction over Tondre.

28. Exercising personal jurisdiction over Tondre does not comport with "traditional notions of fair play and substantial justice."[1]

The evidence revealed that Tondre was born and raised in Texas, and he remained a Texas resident until he graduated from St. Mary's Law School in San Antonio. He was admitted to practice law in Texas in 1967. Thereafter, he moved to New York and then to California, but he returned to Texas around 1971 or 1972 and practiced law in Texas until he moved to Colorado in 1984.

Since his admission to the Texas bar in 1967, Tondre has continuously kept his Texas law license in force. He pays annual dues to the State Bar of Texas and complies with the Texas bar's minimum continuing legal education requirements that apply to nonresident attorneys. The letterhead of Tondre's firm, Strate & Tondre, identifies Tondre as licensed to practice law in Texas, as does his firm's biographical listing in the Martindale–

---

1. Findings of fact 26, 27, and 28 are obviously conclusions of law. The trial court's designation of them is not controlling, and we may treat them as conclusions of law. *Cf. Ray v. Farmers'* *State Bank,* 576 S.W.2d 607, 608 n. 1 (Tex.1979); *Des Champ v. Featherston,* 886 S.W.2d 536, 541 n. 4 (Tex.App.—Austin 1994, no writ).

Hubbel Law Directory. Tondre's profile also describes him as admitted to practice before several federal courts in Texas.

Since 1985, Tondre has rendered legal services in at least fifteen Texas cases. During that time period, Tondre has made at least forty-five trips to Texas, most of which were to practice law in Texas. Tondre maintains an ongoing attorney-client relationship with one Texas client, representing it in two suits that were pending at the time of the special appearance hearing. While Tondre testified, and the trial court found, that he did not purposefully seek out legal business in Texas, he admitted that he purposefully and voluntarily appeared in each Texas case that he was involved in, that he purposefully maintained his Texas law license, and that he purposefully traveled to Texas and engaged in legal business in Texas.

The trial court made the following conclusions of law:

1. Tondre has not had minimum contacts with the State of Texas that would cause Tondre to reasonably anticipate being personally subject to jurisdiction in Texas.

2. The State of Texas does not have specific personal jurisdiction over Tondre.

3. The State of Texas does not have general personal jurisdiction over Tondre.

4. The exercise of personal jurisdiction over Tondre by the State of Texas does not "comport with traditional notions of fair play and substantial justice."

5. The State of Texas has no basis to justify the exercise of territorial jurisdiction over Tondre, and thus, Tondre's special appearance should be granted.

Although Nikolai argued in the trial court that Texas had both general and specific jurisdiction over Tondre, it is clear from his appellate brief that he is only relying on a general jurisdiction theory for Tondre. Accordingly, we will determine if the trial court erred in concluding that it could not assert general jurisdiction over Tondre.

We begin by analyzing whether Tondre purposefully established minimum contacts with Texas, and if so, whether those contacts were continuous and systematic contacts be-

tween Tondre and Texas and amount to a showing of substantial activities by Tondre in Texas. Each case turns on its own facts. *Guardian Royal Exch.*, 815 S.W.2d at 231; *Schlobohm*, 784 S.W.2d at 358; *see Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44. Nevertheless, we look to precedent for guidance.

In *Design Information Sys. v. Feith Sys. & Software, Inc.*, 801 S.W.2d 569 (Tex.App.—Fort Worth 1990), *aff'd in part and rev'd in part on other grounds*, 813 S.W.2d 481 (Tex. 1991), the plaintiff was a Texas resident who had purchased computer software from the defendant, a closely-held Pennsylvania corporation. The defendant had no offices, employees, or representatives in Texas. The defendant engaged in no advertising or other sales efforts specifically directed toward Texas, nor did it engage in "cold calls" to prospective customers. All of the defendant's business was generated by participation in trade shows and national advertising in trade journals, with its customers then initiating contact with the defendant in Pennsylvania. The plaintiff became acquainted with the defendant's products either through a trade show or through another customer of the defendant and placed an order by phone to Pennsylvania. The software was shipped to the plaintiff in Texas, and three letters were later forwarded by the defendant to the plaintiff in Texas in response to his inquiries. At the time of the plaintiff's purchase, the defendant had about ten customers in Texas; at the time of the special appearance hearing, the defendant had about twenty-five Texas customers. The defendant's Texas business was only a tiny percentage of its total business.

The trial court sustained the defendant's special appearance and dismissed the case. On appeal, this court reversed the trial court, finding that the defendant's repeated sales transactions with its twenty-five Texas customers were continuous and systematic contacts sufficient for Texas to exercise general jurisdiction over the defendant. *Id.* at 571. This court distinguished *C.W. Brown Machine Shop, Inc. v. Stanley Machinery Corp.*, 670 S.W.2d 791 (Tex.App.—Fort Worth 1984, no writ), another opinion of this court, where

the nonresident defendant was shown to have made only one isolated sale in Texas.

More recently, in *International Turbine Serv., Inc. v. Lovitt,* 881 S.W.2d 805 (Tex. App.—Fort Worth 1994, writ denied), this court held that Texas could not assert general or specific jurisdiction over a nonresident business based in Arizona that did .2% of its business in Texas and had a Texas nonresident insurance agent license, but the transaction at issue was not connected to the business's Texas license. *Id.* at 809–10. The business did only minimal and sporadic business in Texas as an accommodation to Arizona residents with property in Texas. It did not market its services in Texas, and it had no offices or employees in Texas.

■■■ Undoubtedly, Tondre has purposefully established and maintained minimum contacts with Texas. He grew up in Texas, went to law school in Texas, and has been licensed to practice in Texas since 1967. He lived and practiced in Texas from 1971 until 1984, when he moved to Colorado, and since 1984, Tondre has held himself out as a licensed Texas attorney and has actively handled at least fifteen lawsuits in Texas courts since 1985. Under these facts, Tondre should anticipate being sued in Texas.

The next question is whether Tondre's contacts with Texas were continuous and systematic and amount to a showing of substantial activities by Tondre in Texas. Under this case's undisputed facts, we find that they were.

This case is much more similar to *Design Information* than it is to *C.W. Brown* and *International Turbine.* It is also quite distinguishable from *Myers v. Emery,* 697 S.W.2d 26 (Tex.App.—Dallas 1985, no writ), a case relied on by Tondre. In *Myers,* Emery, an Oklahoma lawyer, was hired by Myers, a Texas resident, based on the recommendation of a Dallas attorney, to represent him in an Oklahoma federal court suit that did not involve Texas property or Texas law. After losing the Oklahoma suit, Myers sued Emery in Texas for legal malpractice. The trial court sustained Emery's special appearance, and the court of appeals affirmed, despite the following contacts: Emery advertised in the Martindale–Hubbel legal directory; he ac-

cepted checks for his services that were drawn on a Dallas bank; he phoned Myers from Oklahoma; two members of his firm were licensed to practice in Texas; he visited Texas on occasion for business and pleasure; and he occasionally provided legal services to Texas clients. *Id.* at 30–31.

The distinctions between Emery, the attorney in *Myers,* and Tondre, are obvious and important. Emery was not licensed to practice in Texas, and he did not practice in Texas at all.

■■■ We lastly must determine if a Texas court's assumption of jurisdiction over Tondre would offend traditional notions of fair play and substantial justice. "Because the minimum contacts analysis now encompasses so many considerations of fairness, it has become less likely that the exercise of jurisdiction will fail a fair play analysis." *Schlobohm,* 784 S.W.2d at 357–58. "Only in rare cases ... will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal Exch.,* 815 S.W.2d at 231.

Taking into account the quality, nature, and extent of Tondre's activities in Texas, we conclude that requiring Tondre, a licensed Texas attorney actively practicing in Texas courts, to submit to the jurisdiction of Texas courts does not offend traditional notions of fair play and substantial justice. *See Design Information,* 801 S.W.2d at 571.

We hold that the trial court erred in sustaining Tondre's special appearance; a Texas court may exercise general jurisdiction over Tondre. Nikolai's first point of error is sustained, the trial court's order sustaining Tondre's special appearance is reversed, and Nikolai's claims against Tondre are remanded for a trial on the merits.

### Point of Error Two

■■■ In his second point of error, Nikolai claims that the trial court erred in granting the special appearance of Strate & Tondre, P.C. The trial court did not make findings of fact or conclusions of law on Strate & Ton-

dre, P.C.'s special appearance. In that case, all necessary findings of fact are implied in support of the trial court's ruling, which the appellate court must affirm if it can be upheld on any legal theory that is supported by the evidence. *Clark v. Noyes,* 871 S.W.2d 508, 511–12 (Tex.App.—Dallas 1994, no writ).

Tondre testified that he is employed by Strate & Tondre, which is a professional corporation, and that it is the same corporation as Madden & Strate, which only underwent a name change. Tondre and Strate are equal shareholders in the corporation and are its only directors and officers. Tondre does not have a law practice other than with Strate & Tondre, P.C., and all income earned by him goes to the corporation's account. In Tondre's pleadings in his Texas cases, his signature appears below the firm name.

▐ Both sides agree that the disposition of the first point of error will control the disposition of the second point of error. The contacts of a corporate representative undertaken on behalf of the corporation will be imputed to the corporation for jurisdictional purposes. *Beechem v. Pippin,* 686 S.W.2d 356, 363 (Tex.App.—Austin 1985, no writ); *see also Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990) ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."); *Coté v. Wadel,* 796 F.2d 981, 983 (7th Cir.1986) (professional corporations to be treated as ordinary corporations for jurisdictional purposes).

Accordingly, because a Texas court may exercise general jurisdiction over Tondre, it also may over Strate & Tondre, P.C. Nikolai's second point of error is sustained, the trial court's order sustaining Strate & Tondre, P.C.'s special appearance is reversed, and Nikolai's claims against Strate & Tondre, P.C. are remanded for a trial on the merits.

### Point of Error Three

In his third point of error, Nikolai claims that the trial court erred in granting the special appearance of Strate. The trial court did not make findings of fact or conclusions of law on Strate's special appearance. Thus, the trial court's ruling implies all necessary findings of fact in support of the trial court's ruling, which we must affirm if it can be upheld on any legal theory that is supported by the evidence. *Clark,* 871 S.W.2d at 511–12.

▐ Strate filed an affidavit establishing the following facts. He is a resident of Colorado and has never been a resident of Texas, owns no property in Texas, and has never conducted business or practiced law in Texas. He has never appeared in any Texas state or federal court. He does not have an authorized agent for service of process in Texas. He has been to Texas only twice since the late 1960's, for a few days of vacation on each occasion.

Strate is an equal shareholder with Tondre in Strate & Tondre, P.C. and, along with Tondre, is a director and officer.

In Green's suit against Nikolai, Strate initially assumed responsibility of Nikolai's case, but Barbara Larson, an associate, primarily handled the case under Tondre's supervision. All of Strate's contacts with USAA were with its Colorado Springs regional office. Between September 1987, when Strate & Tondre, P.C. was hired to represent Nikolai, and the filing of this suit, Strate's only contacts with Texas were four phone calls with Lipscomb, Nikolai's Texas attorney, and one transmittal note that he wrote to Lipscomb. Strate was not involved at all in the suit against Green, her lawyer, and Farmers that Tondre handled for Nikolai. Strate did attend, on behalf of Nikolai, the settlement conference that resulted in the allegedly unauthorized settlement of the Green litigation.

Nikolai testified that he spoke to Strate on only two occasions: once when he was trying to reach Tondre by phone and the other when he was in Strate & Tondre, P.C.'s office in Colorado. Neither conversation substantively concerned Nikolai's litigation.

Nikolai argues that Texas may exercise both general and specific jurisdiction over Strate. We disagree.

Nikolai does not argue that Strate has had continuous and systematic contacts with Texas that amount to a showing of substantial activities by Strate in Texas. Instead, he contends that because general jurisdiction

may be exercised over Tondre and Strate & Tondre, P.C., and because Strate is an officer and shareholder of the firm and controls it, he too is subject to general jurisdiction.

■ No Texas law supports Nikolai's contention; rather, Texas law is clear that a business's contacts may not be imputed to its personnel to establish personal jurisdiction over them. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437–38 (Tex. 1982) ("it is the contacts of the defendant himself that are determinative"); *cf. Sher*, 911 F.2d at 1366 ("a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to other partners").

On Nikolai's claim of specific jurisdiction over Strate, we find that *Myers* is dispositive. The attorney's contacts with Texas in *Myers* were far greater than those of Strate, and the Dallas court found the exercise of personal jurisdiction improper. *See Myers*, 697 S.W.2d at 30–31. Likewise, we find that a Texas court may not exercise specific jurisdiction over Strate.

The trial court correctly sustained Strate's special appearance. Nikolai's third point of error is overruled.

## Conclusion

We affirm the trial court's order sustaining the special appearance of Strate. We reverse the trial court's orders sustaining the special appearances of Tondre and Strate & Tondre, P.C. and remand Nikolai's claims against them for a trial on the merits.