TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00086-CV






State of Texas, Appellant



v.



David L. Johnson, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 97-05444, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING






 The State of Texas ("the State") appeals the dismissal of its suit against appellee,
David L. Johnson. The State named Johnson, a California resident and president of a Texas
corporation, as an individual defendant in a suit that arose out of the rupture of a sealed
radioactive source during an oil field operation. The trial court granted Johnson's special
appearance and dismissed the cause for want of personal jurisdiction. In a single point of error,
the State presents a two-pronged argument that the trial court erred in granting Johnson's motion
to dismiss. First, the State asserts that Johnson's contacts with Texas made through his
corporation can be imputed to Johnson personally, and that these constitute sufficient "minimum
contacts" when coupled with the state's regulatory interest in this case. Second, the State claims
that the assertion of personal jurisdiction over Johnson would not offend the constitutional
standards of fair play and substantial justice. As an alternative argument, the State urges that
dismissal with prejudice was error. Because we agree with the trial court's conclusion that the
State's evidence was insufficient to establish personal jurisdiction over Johnson, we will affirm
the trial-court judgment as reformed to be a dismissal without prejudice.


FACTUAL AND PROCEDURAL BACKGROUND (1)


 David L. Johnson served as the president, vice-president, and secretary of D&G
Operating Company, Inc., a Texas company incorporated in 1994. D&G Operating was the
operator of an oil well at the Winnie site in Chambers County, Texas. In August 1995, D&G
Operating hired several companies to perform various oil field services at the Winnie site. On
August 11, one of the hired companies lost a sealed 3.2 curie Americium-241 neutron source
during a well-logging operation. Following several failed attempts to retrieve the source, another
company entered the well with a "junk snatcher" and recovered the source on September 15. 
Subsequent testing showed that the source was leaking radioactive material, and that the well and
equipment at the site had become contaminated.

 On October 11, the Texas Railroad Commission (the "Commission") ordered D&G
Operating to restrict access to the well site, prevent the further spread of radioactive materials, and
conduct a survey to assess the level and extent of radioactive contamination at the site. In
December 1995 and January 1996, the Commission sent letters to D&G Operating noting that the
company was in violation of the Commission's orders because it had failed to fence the well site
properly. The Commission sent D&G Operating four more notice letters between February and
July 1996 alleging other violations of the October 11, 1995 order. In September 1996, the
Commission referred the matter to the Attorney General's Office.

 In May 1997, the State filed suit against D&G Operating, Johnson, and the three
service companies involved with the lost source; the State also named the president of each service
company as an individual defendant. In its petition, the State alleged violations of various
environmental laws and agency regulations, and requested injunctive relief and civil penalties. 
The State sought to hold Johnson personally liable on two theories: (1) that his actions as an
officer of D&G Operating created personal liability, and (2) that his actions as a shareholder
created personal liability under the "sham to perpetrate a fraud" theory. The State used identical
language in its allegations against two of the other individual defendants.

 Johnson specially appeared to object to the State's assertion of personal jurisdiction
over him as the sole director and shareholder of D&G Operating. At the hearing, his counsel
introduced Johnson's affidavit stating that he was a full-time resident of California, did not have
a home or personal office in Texas, and was not involved in the day-to-day operations of the
company. He stated that his sole connection to the lawsuit was as an officer and director of the
corporation and that he had not directed, participated in, or ratified any of the alleged actions of
D&G Operating giving rise to the suit. Johnson also denied using the corporation to evade
personal legal responsibilities and described himself as an investor in a corporation run by other
people. The State offered seven exhibits, mostly consisting of records from the Secretary of State
and the Comptroller's offices showing that Johnson had been the initial director of three companies
in the state that were later dissolved. This evidence was offered to show that Johnson was the sole
shareholder and director of these companies and should therefore be subject to jurisdiction in
Texas.

 After hearing argument and considering the evidence, the trial court found that: 
(1) Johnson was a full-time resident of California, had never lived in Texas, and had never
committed a tort in Texas; (2) although Johnson was the president and sole shareholder of D&G
Operating, the corporation's day-to-day affairs were conducted by its employees, not Johnson; (3)
Johnson's contacts with Texas were limited to his position as an officer and a shareholder of D&G
Operating; and (4) the State neither alleged nor presented evidence of acts by Johnson in or
directed at Texas. The State did not challenge the trial court's factual findings.

 Based on these findings, the trial court made several conclusions of law. First, the
court ruled that Johnson did not have continuous and systematic contacts with Texas. Next, it
found that Johnson did not conduct activities in or related to Texas sufficient to establish specific
jurisdiction, and had not purposefully established minimum contacts with Texas. Additionally,
the court concluded that Johnson had presented sufficient evidence to show he did not operate
D&G Operating as a sham to perpetrate a fraud. Finally, the court concluded that Texas did not
have jurisdiction over Johnson in his capacity as a corporate officer.

 The district court granted Johnson's motion objecting to jurisdiction and ordered
the cause dismissed with prejudice as to Johnson. In its sole point of error on appeal, the State
complains that the district court erred in dismissing the suit against Johnson for want of personal
jurisdiction. The State makes a two-pronged argument that reflects the dual constitutional
requirements of (1) minimum contacts with the forum state and (2) fairness to the non-resident
defendant. Toward the "minimum contacts" analysis, the State argues that Johnson should be held
liable "because he either directed, ratified, or otherwise participated in the violations of state law";
in the alternative, the State argues that Johnson should be held "indirectly liable for using the
corporate existence (a) as a sham to perpetrate a fraud; (b) for an illegal purpose; (c) to circumvent
state statutes; (d) to evade existing legal obligations; and (e) to justify wrong." On the fairness
prong, the State claims that the assertion of jurisdiction over Johnson would not offend "traditional
notions of fair play and substantial justice." Finally, should we conclude that the trial court
correctly found jurisdiction lacking, the State urges that the court below erred in dismissing the
cause with prejudice to refiling.


DISCUSSION



Standard of Review

 The proper standard for reviewing the evidence in a case involving a challenge to 
in personam jurisdiction is factual sufficiency, not de novo review. See Fish v. Tandy Corp., 948
S.W.2d 886, 891 (Tex. App.--Fort Worth 1997, writ denied); Nikolai v. Strate, 922 S.W.2d 229,
236 (Tex App.--Fort Worth 1996, writ denied); Hotel Partners v. KPMG Peat Marwick, 847
S.W.2d 639, 642 (Tex. App.--Dallas 1993, writ denied). Thus, we may reverse the decision of
the trial court only if its ruling is so against the great weight and preponderance of the evidence
as to be manifestly erroneous or unjust. See In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951). In reviewing such a point of error, we must consider and weigh all of the evidence, both
the evidence that tends to prove the existence of a vital fact as well as evidence that tends to
disprove its existence. See Ames v. Ames, 776 S.W.2d 175, 176 (Tex. 1986). Considering the
evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to
be manifestly unjust, the point of error should be sustained, regardless of whether there is some
evidence to support it. See Watson v. Prewitt, 320 S.W.2d 815, 816 (Tex. 1959); King's Estate,
244 S.W.2d at 661.


Constitutional Requirements for Asserting Personal Jurisdiction

 A Texas court may exercise personal jurisdiction over a nonresident if two
conditions are met: (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2)
the exercise of jurisdiction is consistent with the due process guarantees of the federal and state
constitutions. See Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). The long-arm
statute extends personal jurisdiction to nonresident defendants doing business in Texas when the
business conducted by the nonresident in Texas is continuous and systematic, or when litigation
arises out of or is related to the business conducted by the nonresident defendant in Texas. See
Nikolai, 922 S.W.2d at 233. The Texas Supreme Court has held that the broad language of the
"doing business" requirement allows the long-arm statute to reach as far as the federal constitution
permits. See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d
223, 226 (Tex. 1991); Schlobohm, 784 S.W.2d at 357.

 To satisfy due process, the plaintiff must overcome two hurdles. First, the plaintiff
must show that the nonresident defendant has purposefully established minimum contacts with
Texas. See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 105 (1987);
International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Second, the plaintiff must show
that the maintenance of the suit does not offend "traditional notions of fair play and substantial
justice." International Shoe, 326 U.S. at 316; Schlobohm, 784 S.W.2d at 357.

 The United States Supreme Court has extensively developed the minimum contacts
analysis, the first prong of the jurisdictional test. An essential goal of the minimum contacts test
is to protect the nonresident defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S.
286, 292 (1980). This goal requires the court to determine whether the nonresident defendant has
purposely availed itself of the privilege of conducting activities within the forum state, thus
invoking the benefits and protection of its laws. See Burger King Corp. v. Rudzewicz, 471 U.S.
462, 476 (1985). The purposeful availment requirement ensures that a nonresident defendant will
not be haled into a foreign jurisdiction based solely on random, fortuitous, or attenuated contacts
or unilateral activity of another party or a third person. See id. at 475.

 Furthermore, a nonresident defendant must have fair warning that a particular
activity may subject it to the jurisdiction of a foreign sovereign. See id. at 472. Some overt act
is required by a nonresident defendant to subject it to the possibility of being haled into a foreign
court. See Nikolai, 922 S.W.2d at 234. Isolated contacts with the forum state or its residents are
not sufficient for a court to assume personal jurisdiction over a nonresident defendant. See id.
(citing Burger King, 471 U.S. at 475 n.18). For a court to find the minimum contacts necessary
for jurisdictional purposes, there must be continuing contacts. See id.

 The Texas Supreme Court has followed the United States Supreme Court in refining 
the minimum contacts analysis into two categories: specific and general jurisdiction. When
specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident
defendant's contact with the forum state in order to satisfy the minimum contacts requirement. 
See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 n.8 (1984); CSR Ltd. v.
Link, 925 S.W.2d 591, 595 (Tex. 1996). The minimum contacts analysis focuses on the
relationship among the defendant, the forum, and the litigation. See Helicopteros, 466 U.S. at
414; Schlobohm, 784 S.W.2d at 357. But the contact must have resulted from the nonresident
defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. See
Helicopteros, 466 U.S. at 417; World-Wide Volkswagen, 444 U.S. at 298. Furthermore, the
nonresident defendant's activities must have been purposefully directed to the forum and the
litigation must have resulted from alleged injuries that arise out of or relate to those activities. See
Burger King, 471 U.S. at 472.

 General jurisdiction may be asserted when the cause of action does not arise from
or relate to the nonresident defendant's purposeful conduct within the forum state, but there are
continuous and systematic contacts between a nonresident defendant and the forum state. See
Helicopteros, 466 U.S. at 414-16; CSR Ltd., 925 S.W.2d at 595. The minimum contacts inquiry
is broader and more demanding when general jurisdiction is alleged, requiring a showing of
substantial activities in the forum state. See CSR Ltd., 925 S.W.2d at 595; Schlobohm, 784
S.W.2d at 357.

 Once it has been determined that a nonresident defendant has purposefully
established minimum contacts with the forum state, the contacts are evaluated in light of the
factors to determine whether the assertion of personal jurisdiction comports with fair play and
substantial justice. See Burger King, 471 U.S. at 476; Schlobohm, 784 S.W.2d at 357-58. These
factors include: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating
the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate
judicial system's interest in obtaining the most efficient resolution of controversy; and (5) the
shared interest of the several states in furthering fundamental substantive social policies. See
Asahi Metal, 480 U.S. at 113; Burger King, 471 U.S. at 477; World-Wide Volkswagen, 444 U.S.
at 292. However, the Texas Supreme Court has stated that we must avoid the mechanical
application of any jurisdictional test. See Schlobohm, 784 S.W.2d at 358.


Minimum Contacts


 At the hearing on Johnson's objection to personal jurisdiction, the only evidence
offered was documentary and affidavit evidence; the court heard no live testimony. In his
affidavit, Johnson stated that he is a full-time resident of California and that at the time of the
events giving rise to this lawsuit, he was the president and sole shareholder of D&G Operating. 
Johnson swore that he was not involved in the day-to-day operations of the company and had no
other connections with the State of Texas. He also affirmed in his affidavit that he acted only as
an officer and investor in a corporation run by other people, and had not directed, participated in,
or ratified any of the actions by D&G Operating that led to this lawsuit. Finally, Johnson denied
using D&G Operating's corporate status to evade personal legal responsibilities.

 In its attempt to prove Johnson had sufficient minimum contacts within Texas, the
State introduced seven exhibits at the hearing. The first exhibit consisted of records from the
Secretary of State's office; included in these records were the articles of incorporation for D&G
Operating Company, naming David L. Johnson as its sole director. The State's second exhibit
contained records from the Comptroller's office showing that D&G Operating's corporate charter
was forfeited in October of 1996 for failure to pay franchise taxes. Among the records was a
franchise tax report of August 9, 1995, signed by David L. Johnson as president. The State's
third exhibit included records from the Texas Railroad Commission documenting checks paid by
D&G Operating to the Railroad Commission for fees owed in the operation of various wells; also
in this exhibit were P-4 forms (2) for the Winnie well site showing D&G Operating as the well
operator. However, these forms were signed not by Johnson, but by Ramona Varney, who is
listed as manager of operations for D&G Operating. This exhibit also included P-5 forms (3) listing
David L. Johnson as president and secretary of D&G Operating. The State's fourth and fifth
exhibits contained the documents on file with the Secretary of State and the Comptroller's Office
for D&G Energy Corporation. This company was incorporated in 1993 and involuntarily
dissolved in 1996 for failing to maintain a registered agent in the state and for failing to satisfy
franchise tax requirements; David L. Johnson is listed as its president, vice-president, secretary,
and sole director. On a Texas Franchise Tax Public Information Report for D&G Energy,
Johnson's address is listed in Lake Forest, California. Exhibits six and seven contained similar
documents on file with the Secretary of State and the Comptroller's Office for another company,
Attorneys Equity Corporation of Texas, which was incorporated in 1988 and dissolved three years
later for failing to satisfy franchise tax requirements. The articles of incorporation for this
company list David L. Johnson of Laguna Niguel, California as one of two initial directors.

 As the defendant objecting to the assertion of personal jurisdiction, Johnson had the
burden of negating all bases of jurisdiction. See Temperature Sys., Inc. v. Bill Pepper, Inc., 854
S.W.2d 669, 673 (Tex. App.--Dallas 1993, writ dism'd by agr.) (citing Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Siskind v. Villa Found. for Educ., Inc., 642
S.W.2d 434, 438 (Tex. 1982)). However, jurisdiction over an individual generally cannot be
based on jurisdiction over a corporation with which he is associated unless the corporation is the
alter ego of the individual. See Voskov v. Chase Manhattan Bank, N.A., 909 S.W.2d 95, 99 (Tex. 
App.--Houston [14th Dist.] 1995, writ denied) (citing Clark v. Noyes, 871 S.W.2d 508, 509 (Tex.
App.--Dallas 1994, no writ); Leon Ltd. v. Albuquerque Commons Partnership, 862 S.W.2d 693,
708 (Tex. App.--El Paso 1993, no writ)). Proof that a defendant is a nonresident is sufficient to
meet this burden if there are no jurisdictional allegations in the plaintiff's petition. See
Temperature Sys., 854 S.W.2d at 673. When a plaintiff alleges jurisdictional facts, however,
proof of nonresidency is not enough; the defendant must also negate the jurisdictional facts
alleged. See id.

 In this case, the only jurisdictional facts pleaded were that as the president of D&G
Operating, Johnson personally directed, participated in, and/or ratified violations of an emergency
order of the Texas Department of Health; alternatively, the State sought to pierce the corporate
veil in this cause, alleging that Johnson used the existence of this corporation to avoid compliance
with the law, to perpetrate fraud, to evade existing legal obligations, to circumvent state statutes,
and to justify wrong. Although these allegations do not appear in the jurisdictional section of the
State's petition, their existence elsewhere in the petition was sufficient to require that Johnson
present evidence that he was not involved in the day-to-day operations and decisions of the
company. Cf. Vosko, 909 S.W.2d at 99 (if plaintiff does not allege that the defendant performed
a specific act in the forum, the defendant's evidence that he is a nonresident is sufficient to carry
his burden of proof). The State argued that, contrary to Johnson's statement that he was purely
an investor in a corporation run by other people, the public records introduced at the hearing
"strongly suggest" that he was involved in managing the day-to-day affairs of the corporation. 
In essence, the State claims that the fact Johnson only sometimes signed notarized documents in
California is sufficient evidence that he was present in Texas and was involved in the day-to-day
running of the business.

 In its brief, the State argues that personal jurisdiction can be asserted over Johnson
because he can be held personally liable as a corporate officer of D&G Operating. The State cites
a number of cases in which Texas courts have held a corporate officer responsible for torts of the
corporation. See generally Holloway v. Skinner, 860 S.W.2d 217 (Tex. App.--Austin 1993),
rev'd, 898 S.W.2d 793 (Tex. 1995); State v. Malone, 853 S.W.2d 82 (Tex. App.--Houston [14th
Dist.] 1993, writ denied); N.S. Sportswear, Inc. v. State, 819 S.W.2d 230 (Tex. App.--Austin
1991, no writ); Rio Grande Land & Cattle Co. v. Light, 749 S.W.2d 206 (Tex. App.--San
Antonio 1988), rev'd and remanded in part, 758 S.W.2d 747 (Tex. 1988). However, these cases
are all distinguishable because they only concern liability; none of them addresses the issue of
personal jurisdiction. Furthermore, the above cases stand collectively for the proposition that
liability only attaches if a corporate officer had knowledge of, participated in, or knowingly and
willfully committed wrongful conduct. The State failed to show that Johnson knowingly
participated in or willfully committed any wrongful acts in this case.

 The State also relies on a statement made by the supreme court in Guardian Royal
Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223 (Tex. 1991), that a
state's special regulatory interest is an "important consideration" in deciding whether the exercise
of jurisdiction is reasonable, and that jurisdiction may be decided on a lesser showing of minimum
contacts. Id. at 229. However, the Guardian Royal court also observed that "a state's regulatory
interest alone is not in and of itself sufficient to provide a basis for jurisdiction." Id. 
Furthermore, this Court noted in an earlier decision that there were "serious problems" with the
concept of extending personal jurisdiction based solely on a state's regulatory interest, and that
other courts were confusing "legislative wishes to assert jurisdiction with a constitutional right to
do so." See Beechem v. Pippin, 686 S.W.2d 356, 360-61 (Tex. App.--Austin 1985, no writ). 
The State's reliance on Guardian Royal is misplaced because the State cannot establish jurisdiction
based on its regulatory interest alone, and the evidence it presented to the trial court is not
sufficient to support the exercise of personal jurisdiction over Johnson.

 Johnson asserts that he should be shielded from personal jurisdiction under the rule
that contacts made on behalf of the corporation do not create personal jurisdiction over the
individual. Generally, jurisdiction over an individual cannot be based upon jurisdiction over a
corporation. See Vosko, 909 S.W.2d at 99; Clark v. Noyes, 871 S.W.2d 508, 518 (Tex.
App.--Dallas 1994, no writ). As an alternative argument, the State asks this Court to disregard 
the corporate existence because Johnson used D&G Operating "(a) as a sham to perpetrate a fraud;
(b) for an illegal purpose; (c) to circumvent state statutes; (d) to evade existing legal obligations;
and (e) to justify wrong." However, the State has presented no arguments on this point and cites
no cases to support its theory. The State has failed to properly brief this alternative argument on
appeal, and we will not address it. See Tex. R. Civ. P. 38.1(h).

 The evidence the State presented to the trial court does not show that Johnson had
sufficient contacts with Texas to justify the assertion of personal jurisdiction. Furthermore, the
cases the State cites do not support its theory that Johnson's status as a shareholder and corporate
officer of D&G Operating constitute sufficient minimum contacts. We find the evidence sufficient
to support the trial court's conclusion that Johnson did not purposefully establish minimum
contacts with Texas.


"Fair Play and Substantial Justice"

 The second prong of the State's argument is that asserting personal jurisdiction over
Johnson would not offend "traditional notions of fair play and substantial justice." The fairness
prong is separate and distinct from the minimum contacts analysis; therefore, both must be
satisfied to pass constitutional muster. See Burger King, 471 U.S. at 476; Schlobohm, 784
S.W.2d at 357-58. Because the State failed to establish that Johnson had minimum contacts with
the State of Texas, we do not reach the issue of whether the exercise of personal jurisdiction in
this case would satisfy the constitutional "fairness" requirement.

 The trial court correctly determined that Johnson's affidavit contradicted the facts
alleged in the State's petition, and that the State's documentary evidence was insufficient to
establish jurisdiction over Johnson. We find the evidence factually sufficient to support the trial
court's conclusion. The State's single point of error is overruled.


Dismissal with Prejudice

 In rendering a judgment of dismissal, a trial court must refrain from rendering a
judgment on the merits of the suit. See Attorney Gen. of Tex. v. Sailer, 871 S.W.2d 257, 258
(Tex. App.--Houston [14th Dist.] 1994, writ denied); State v. Schless, 815 S.W.2d 373, 376
(Tex. App.--Austin 1991, original proceeding [leave denied]). A dismissal with prejudice
functions as a final determination on the merits. See Mossler v. Shields, 818 S.W.2d 752, 754
(Tex. 1991). Thus, the court below erred in granting a dismissal with prejudice. See Stephanou
v. Texas Med. Liab. Ins. Underwriting Ass'n, 792 S.W.2d 498, 500 (Tex. App.--Houston [1st
Dist.] 1990, writ denied); Schenker v. City of San Antonio, 369 S.W.2d 626, 631 (Tex. Civ.
App.--San Antonio 1963, writ ref'd n.r.e.). The proper correction of the trial court's error is not
reversal, but reformation of the judgment as a dismissal without prejudice. See Lane v. Baxter
Healthcare Corp. 905 S.W.2d 39, 42 (Tex. App.--Houston [1st Dist.] 1995, no writ). We
therefore order that the words "with prejudice" be deleted from the trial court's judgment, and
reform the judgment as a dismissal without prejudice.


CONCLUSION


 The judgment of the trial court is affirmed as reformed.



 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel*

Reformed and, as Reformed, Affirmed

Filed: November 30, 1998

Do Not Publish













* Before Lee Yeakel, former appellate justice, Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

 
1. Because the district court granted Johnson's special appearance and dismissed for lack of
jurisdiction, it did not address the merits of the case. Therefore, facts as alleged in the State's
petition have not been proved in any court, and are only taken as true for purposes of establishing
a context for this appeal.

2. A P-4 form, required to be filed with the Railroad Commission, describes the oil or gas lease,
its location, and the name and address of the operator.
3. A P-5 form is an organizational report required to be filed by the Railroad Commission. The
report lists the name of the operator, its corporate officers, and addresses for both.



t. See Tex. R. Civ. P. 38.1(h).

 The evidence the State presented to the trial court does not show that Johnson had
sufficient contacts with Texas to justify the assertion of personal jurisdiction. Furthermore, the
cases the State cites do not support its theory that Johnson's status as a shareholder and corporate
officer of D&G Operating constitute sufficient minimum contacts. We find the evidence sufficient
to support the trial court's conclusion that Johnson did not purposefully establish minimum
contacts with Texas.


"Fair Play and Substantial Justice"

 The second prong of the State's argument is that asserting personal jurisdiction over
Johnson would not offend "traditional notions of fair play and substantial justice." The fairness
prong is separate and distinct from the minimum contacts analysis; therefore, both must be
satisfied to pass constitutional muster. See Burger King, 471 U.S. at 476; Schlobohm, 784
S.W.2d at 357-58. Because the State failed to establish that Johnson had minimum contacts with
the State of Texas, we do not reach the issue of whether the exercise of personal jurisdiction in
this case would satisfy the constitutional "fairness" requirement.

 The trial court correctly determined that Johnson's affidavit contradicted the facts
alleged in the State's petition, and that the State's documentary evidence was insufficient to
establish jurisdiction over Johnson. We find the evidence factually sufficient to support the trial
court's conclusion. The State's single point of error is overruled.


Dismissal with Prejudice

 In rendering a judgment of dismissal, a trial court must refrain from rendering a
judgment on the merits of the suit. See Attorney Gen. of Tex. v. Sailer, 871 S.W.2d 257, 258
(Tex. App.--Houston [14th Dist.] 1994, writ denied); State v. Schless, 815 S.W.2d 373, 376
(Tex. App.--Austin 1991, original proceeding [leave denied]). A dismissal with prejudice
functions as a final determination on the merits. See Mossler v. Shields, 818 S.W.2d 752, 754
(Tex. 1991). Thus, the court below erred in granting a dismissal with prejudice. See Stephanou
v. Texas Med. Liab. Ins. Underwriting Ass'n, 792 S.W.2d 498, 500 (Tex. App.--Houston [1st
Dist.] 1990, writ denied); Schenker v. City of San Antonio, 369 S.W.2d 626, 631 (Tex. Civ.
App.--San Antonio 1963, writ ref'd n.r.e.). The proper correction of the trial court's error is not
reversal, but reformation of the judgment as a dismissal without prejudice. See Lane v. Baxter
Healthcare Corp. 905 S.W.2d 39, 42 (Tex. App.--Houston [1st Dist.] 1995, no writ). We
therefore order that the words "with prejudice" be deleted from the trial court's judgment, and
reform the judgment as a dismissal without prejudice.


CONCLUSION


 The judgment of the trial court is affirmed as reformed.



 Bea Ann Smith, Justice