TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00684-CV






Carol Ann Reid Smith, Individually and as Personal Representative of the


Estate of Theodore R. Reid, Appellant



v.



Sidney E. Lanier, Independent Executor of the Estate of Wylma E. Reid, Appellee






FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 70,273-A, HONORABLE GUY HERMAN, JUDGE PRESIDING







 Appellant Carol Ann Reid Smith, individually and as representative of the estate
of her deceased father, Theodore Reid, brings this interlocutory appeal of the probate court's
denial of her special appearances and of its injunctive order compelling her to return half of her
father's assets from South Carolina and deposit them in the registry of the probate court. Smith
presents this Court with four issues on appeal: (1) whether the evidence in the record is sufficient
to support the exercise of personal jurisdiction over Smith in her representative capacity; (2)
whether the evidence in the record is sufficient to support the exercise of personal jurisdiction over
Smith in her individual capacity; (3) whether the probate court abused its discretion in refusing
to defer its subject-matter jurisdiction in favor of the South Carolina probate court; and (4)
whether the probate court abused its discretion in issuing the temporary injunction. We will
affirm.

BACKGROUND

 This cause presents us with the complex problem of competing states' probate
jurisdiction over an elderly couple's property. The couple, both in their nineties, died in quick
succession; the husband died in South Carolina a mere fifty-two days after his wife died in Texas. 
Each left their entire estate to a different beneficiary. The husband's will was admitted for probate
in South Carolina before the Texas probate court had characterized the couple's property and
settled the wife's estate. The matter is further complicated by the fact that Texas is a community
property state, where property owned by a married couple is presumed to be part of the
community unless it meets certain specific criteria, (1) whereas South Carolina is a common-law
state, where property titled in a person's name passes through that person's estate.

 Theodore and Wylma Reid married after retirement age and remained married for
more than twenty-five years. The two resided in Texas throughout their marriage and owned
property valued at more than $2,500,000. Carol Ann Reid Smith, Mr. Reid's only child from a
previous marriage, lived in South Carolina during the Reids' marriage. In February 1998, Smith
came to Texas to help move Mr. and Mrs. Reid into a retirement home in Austin. During this
visit, she attended a meeting with her father and his attorney. At the meeting, she accepted her
father's power of attorney and aided in the drafting of his will, which left Smith all of Mr. Reid's
property and named Smith as the personal representative of his estate.

 Wylma Reid died on June 28, 1998. An application to probate Mrs. Reid's will
was filed on July 9, 1998, and her will was admitted for probate in a Travis County probate court
on July 29. The will specified that Texas law controlled its disposition. Mrs. Reid left all of her
property to the Texas Baptist Children's Home. (2) She named as her independent executor appellee
Sidney Lanier. Smith returned to Austin from South Carolina for Mrs. Reid's funeral. While in
Austin, Smith began using her father's power of attorney to gather her father's assets. During this
investigation into her father's financial affairs, she discovered a number of valuable securities held
in a safe-deposit box. Smith went home to South Carolina, but returned two weeks later to move
her father to South Carolina and to collect Mr. Reid's assets and transfer them to South Carolina. 
Over the next weeks, using her father's power of attorney, Smith: took all of Mr. Reid's financial
records to South Carolina; removed the securities from the safe-deposit box and closed the
account; transferred the securities to a Merrill Lynch account in South Carolina; stored the Reids'
automobile in Niederwald, Texas; withdrew $42,000 from the Reids' account at Bank One in
Austin and deposited it into two accounts in South Carolina; and established her power of attorney
over Mr. Reid's American Express mutual fund account.

 Mr. Reid died on August 7, 1998, nineteen days after Smith moved him to South
Carolina and placed him in a retirement home. He was ninety-six years old. On September 4,
1998, Mr. Reid's will was admitted for probate in South Carolina, and Smith was named the
personal representative of her father's estate. Smith submitted an inventory of Mr. Reid's assets,
valued at more than $2,000,000, to the South Carolina probate court pursuant to South Carolina
law. (3) In the inventory, Smith claimed that Mr. Reid solely owned all of the property that she had
transferred to South Carolina from Texas, including the securities from the safe-deposit box. The
only interest in the property of Mrs. Reid reflected on the inventory was a half interest in an
automobile valued at $4000.

 Meanwhile, Lanier initiated proceedings in Texas to halt the probate process in
South Carolina in order to protect the beneficiary of Mrs. Reid's estate. He filed a declaratory
judgment action in Travis County requesting that the Texas court determine the characterization,
whether community or separate property, of the Reids' assets at the time of Mrs. Reid's death. 
Lanier also requested and received a temporary restraining order freezing one-half of the assets
owned by the Reids and enjoining Smith from any further activity involving this half of the
property. At a subsequent temporary injunction hearing, Smith filed a special appearance in her
capacities as both an individual and as representative of Mr. Reid's estate objecting to the Texas
probate court's personal and subject-matter jurisdiction. The probate court, however, found the
necessary jurisdiction and issued the injunction. (4) The injunction required Smith to return half of
the assets she had previously transferred to South Carolina and to deposit them into the registry
of the Texas probate court until such time as a characterization of the assets could be made. Smith
appeals.


STANDARD OF REVIEW

 When a defendant challenges a court's exercise of personal jurisdiction through a
special appearance, she carries the burden of negating all bases of personal jurisdiction. See
Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Siskind v. Villa Found.
for Educ., Inc., 642 S.W.2d 434, 438 (Tex. 1982); Nikolai v. Strate, 922 S.W.2d 229, 236 (Tex.
App.--Fort Worth 1996, writ denied). When a trial court overrules a special appearance, the
defendant should request the court to make findings of fact according to Texas Rule of Civil
Procedure 296. Runnells v. Firestone, 746 S.W.2d 845, 849 (Tex. App.--Houston [14th Dist.]
1988, writ denied). Absent such findings, we view the trial court's judgment as impliedly finding
all the necessary facts to support its judgment. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.
1990). In the instant cause, appellants have made no request for findings of fact and conclusions
of law from the trial court, and none were filed. We therefore presume that the trial court made
all necessary findings to support its judgment. See Garner v. Furmanite Australia PTY., Ltd., 966
S.W.2d 798, 802 (Tex. App.--Houston [1st Dist.] 1998, writ denied). Where a complete
statement of facts appears in the record, however, these implied findings are not conclusive and
an appellant may challenge the sufficiency of the evidence. Roberson v. Robinson, 768 S.W.2d
280, 281 (Tex. 1989). Where such points are raised, the standard of review to be applied is the
same as that to be applied in the review of jury findings or a trial court's findings of fact. Id.

 When in personam jurisdiction is challenged, we review all the evidence. See
Nikolai, 922 S.W.2d at 236; Hotel Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 632 (Tex.
App.--Dallas 1993, writ denied). We apply a factual sufficiency standard in reviewing the
evidence, not a de novo review. (5) See Nikolai, 922 S.W.2d at 236; Hotel Partners, 847 S.W.2d
at 632; NCNB Texas Nat'l Bank v. Anderson, 812 S.W.2d 441, 443-44 (Tex. App.--San Antonio
1991, no writ). Thus, we may reverse the decision of the trial court only if its ruling is so against
the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951).


DISCUSSION

Personal Jurisdiction over Smith as Representative of the Estate

 Smith's first issue contends the probate court erred in asserting personal jurisdiction
over her as a representative of Mr. Reid's estate. She argues that she is a South Carolina resident,
the disputed property is similarly located in South Carolina, and that Texas cannot obtain long-arm
jurisdiction over her or the estate. See Tex. Civ. Prac. & Rem. Code Ann. § 17.041-.045 (West
1997); see also Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990) (Two components
required for assertion of personal jurisdiction: (1) authorized by Texas long-arm statute; and (2)
consistent with federal and state constitutional guarantees of due process). Although Smith
challenges in this issue the Texas probate court's in personam jurisdiction, we will begin our
analysis with an examination of in rem jurisdiction, and of the authority of the Travis County
probate court upon Lanier's filing of the application for probate. (6)

 Statutory probate courts have jurisdiction over all matters relating to the settlement,
partition, and distribution of estates of deceased persons. See Tex. Prob. Code Ann. § 5A(b)
(West Supp. 1999). Moreover, a probate court may exercise the pendent and ancillary jurisdiction
necessary to promote judicial efficiency and economy. Id. § 5A(d).

 The central dispute in this cause concerns the characterization of the property,
whether separate or community property, owned by Mr. and Mrs. Reid upon Mrs. Reid's death,
and which judicial tribunal is charged with making that determination. Smith claims that all
property removed to South Carolina belonged to her father as separate property. Her argument
continues that, as Mr. Reid's separate property, South Carolina properly has subject-matter
jurisdiction over the disputed property following Mr. Reid's death. Therefore, Smith argues that
because the property removed to South Carolina belonged solely to Mr. Reid, a Texas probate
court disposing of Mrs. Reid's estate cannot establish the minimum contacts necessary to obtain
in rem jurisdiction. She finds support for this proposition in Shaffer v. Heitner, 433 U.S. 186
(1977).

 In Shaffer, the United States Supreme Court answered the question of whether
minimum-contacts analysis pursuant to International Shoe Co. v. Washington, 326 U.S. 310
(1945) governed in rem jurisdictional analysis as it does cases of in personam jurisdiction. See
Shaffer, 433 U.S. at 212. Shaffer involved a shareholder in a Delaware corporation who sought
to gain jurisdiction over out-of-state corporate officers in his derivative suit by sequestering in a
Delaware state court their shares of stock in the corporation. Delaware law characterized all
shares held in a Delaware corporation, regardless of their physical location, to be in Delaware,
and thus within the state's in rem jurisdiction. Reversing the Delaware Supreme Court's finding
of in rem jurisdiction, the United States Supreme Court concluded that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and
its progeny." See id.; see also International Shoe, 326 U.S. at 316 ("[D]ue process requires only
that in order to subject a defendant to a judgment in personam, if he be not present within the
territory of the forum, he have certain minimum contacts with it such that the maintenance of the
suit does not offend 'traditional notions of fair play and substantial justice.'"). The Supreme Court
applied the appropriate analysis and found that sufficient contacts did not exist to exert Delaware
jurisdiction over the property.

 Appellant relies on Shaffer to support her assertion that Texas state jurisdiction over
her and the disputed property lacks the requisite minimum contacts. Before engaging in this
analysis, however, we note an important difference between Shaffer and the instant cause. In
Shaffer, the Supreme Court found very significant the fact that the property over which the state
sought jurisdiction was not the subject matter of the litigation. See Shaffer, 433 U.S. at 213. As
the Court noted, "when claims to the property itself are the source of the underlying controversy
between the plaintiff and the defendant, it would be unusual for the State where the property is
located not to have jurisdiction. . . . The State's strong interest in assuring the marketability of
property within its borders and in providing a procedure for peaceful resolution of disputes about
the possession of that property would also support jurisdiction, as would the likelihood that
important records and witnesses will be found in the State." Id. at 207-08. Thus, Shaffer
recognizes the general rule that a state court maintains in rem jurisdiction over property located
within the state that gives rise to the cause of action. In the instant cause, while it is true that the
disputed property now resides in South Carolina, the cause before the Texas probate court involves
property held in Texas during the marriage of two Texas residents, property that is subject to
probate proceedings following the death in Texas of one of the residents.

 Texas is a community property state. All property possessed by either spouse
during or on dissolution of marriage is presumed to be community property. Tex. Fam. Code
Ann. § 3.003 (West 1998). The presumption which obtains when the marriage is dissolved applies
to dissolution by death as well as divorce. See George v. Reynolds, 53 S.W.2d 490, 494 (Tex.
Civ. App.--Eastland 1932, writ dism'd). This presumption of community property may be
overcome by a spouse asserting separate property by clearly tracing the origin of the property as
an asset on hand before marriage. See Kirtley v. Kirtley, 417 S.W.2d 847, 853 (Tex. Civ.
App.--Texarkana 1967, writ dism'd w.o.j.). Whether the presumption as to the community
character of marital property is overcome is a question for the jury. See Orrill v. Orrill, 271
S.W.2d 173, 175-76 (Tex. Civ. App.--Texarkana 1954, no writ). The characterization of
property clearly lies within the probate court's jurisdiction over all matters relating to the
settlement and distribution of a decedent's estate. See, e.g., Estate of Hanau v. Hanau, 730
S.W.2d 663 (Tex. 1987).

 Smith argues that because her father owned the securities before the marriage, the
securities necessarily remain his estate's separate property. We express no present opinion on the
character of the disputed property; that question is not before us. However, we note that the
decision as to the character of the disputed property is not Smith's to make. Given the community
property presumption, (7) Smith must convince a Texas jury that this presumption of community
property is overcome. Until such time as the Texas probate court has ruled on the character of
the property and determined the extent of the property owned by Mrs. Reid at the time of her
death, the property must remain encumbered with the Texas probate court's authority to determine
its character. See Lucik v. Taylor, 596 S.W.2d 514, 516 (Tex. 1980). (8)

 Furthermore, applying a minimum-contacts analysis to the disputed property yields
the same result--in rem jurisdiction. International Shoe states that due process requires that the
application of jurisdiction must depend "upon the quality and nature of the activity in relation to
the fair and orderly administration of the laws which it was the purpose of the due process clause
to insure." International Shoe, 326 U.S. at 319. The core issue of an inquiry into jurisdiction
is the relationship among the property, the forum, and the litigation. See Shaffer, 433 U.S. at 204. 
The Reids lived in Texas throughout their marriage. Mrs. Reid's will contained a choice of law
provision requiring the application of Texas law. The property was located in Texas at the time
of Mrs. Reid's death. There was every expectation that her will would be filed and disposed of
in a Texas probate court. We hold that the disputed property had the minimum contacts with
Texas necessary in accordance with International Shoe such that the application of in rem
jurisdiction by the Texas probate court does not offend traditional notions of fair play and
substantial justice.

 Smith next cites this Court to Costello v. State, 774 S.W.2d 722 (Tex.
App.--Corpus Christi 1989, writ denied) for the proposition that a court loses its in rem
jurisdiction once the res has been released or removed from the control of the court's jurisdiction. 
See Costello, 774 S.W.2d at 724. Lanier responds that Costello creates an exception for this loss
of jurisdiction if the res is removed accidentally, fraudulently, or improperly. See id. Lanier
bolsters his argument through reliance on the holding in State v. Approximately $2,000,000 in
U.S. Currency, 822 S.W.2d 721 (Tex. App.--Houston [1st Dist.] 1991, no writ). In State v.
$2,000,000 the court stated: "The general rule of in rem jurisdiction is the court's jurisdiction
is dependent upon its control over the res. The release or removal of the res from the control of
the court will terminate the court's jurisdiction over the res. However, if the res is released
accidentally, fraudulently, or improperly, the court will not be divested of its jurisdiction." Id.
at 726 (citations omitted).

 Both Costello and State v. $2,000,000 involved property forfeiture proceedings
resulting from narcotics convictions. The dispute over the court's jurisdiction in both cases grew
out of official actions of the court releasing the res from its control. In Costello, the court ordered
the seized property forfeited to the county sheriff, releasing the State's jurisdiction over the
property for purposes of appeal. See Costello, 774 S.W.2d at 723-24. In State v. $2,000,000,
the State improperly transferred the seized property to a federal district court, and thus retained
jurisdiction over the res by virtue of its failure to properly transfer the res from its control. State
v. $2,000,000, 822 S.W.2d at 726-27. In the present situation, the Texas probate court has taken
no action to release the res from its jurisdiction. To the contrary, the Texas probate court has
taken every step to protect its in rem jurisdiction over Mrs. Reid's property. We hold the Texas
probate court did not lose its in rem jurisdiction because Smith unilaterally transferred the property
to another state; Texas jurisdiction is not so easily defeated. Neither Costello nor State v.
$2,000,000 speak to the situation at hand. Because the Texas probate court never released its
control over the res, it retained its in rem jurisdiction.

 Having found that the Texas probate court had in rem jurisdiction to determine the
character of the Reids' property owned at the time of Mrs. Reid's death, we now examine whether
the probate court also had in personam jurisdiction over Smith in her capacity as representative
of Mr. Reid's estate. The Texas court retains in rem jurisdiction over the property irrespective
of the manner of its transfer to South Carolina. (9) Because the Texas probate court has in rem
jurisdiction to the extent of having the authority to characterize the Reids' property at the time of
Mrs. Reid's death, the court has jurisdiction over Smith as representative of Mr. Reid's estate. 
We hold that sufficient evidence exists to support the exercise of personal jurisdiction over Smith
in her representative capacity. We overrule Smith's first issue.


Personal Jurisdiction over Smith as Individual

 Smith next argues that the evidence in the record is insufficient to establish personal
jurisdiction over her as an individual. Smith notes that she is a non-resident of Texas, and thus
not subject to its jurisdiction without application of the Texas long-arm statute. See Tex. Civ.
Prac. & Rem. Code Ann. § 17.041-.045 (West 1997). Additionally, any contacts she made with
the state or actions she took within the state occurred while acting under her father's power of
attorney, and thus as his agent and not as an individual.

 A Texas court may exercise jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports
with state and federal constitutional guarantees of due process. See Guardian Royal Exch. Assur.,
Ltd. v. English China, 815 S.W.2d 223, 226 (Tex. 1991). The Texas long-arm statute authorizes
the exercise of jurisdiction over non-resident defendants "doing business" in Texas. See Tex. Civ.
Prac. & Rem. Code Ann. § 17.042 (West 1997). The statute expressly identifies several acts that
constitute "doing business" and states that the list is not exhaustive. The "broad language" of the
long-arm statute permits an expansive reach, limited only by federal constitutional requirements
of due process. See Schlobohm, 784 S.W.2d at 357.

 Under the federal constitutional test of due process, a state may assert personal
jurisdiction over a non-resident defendant if: (1) the defendant has purposefully established
minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with fair play
and substantial justice. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985). 
Under the minimum-contacts analysis, we focus on the defendant's intentional activities and
expectations in deciding whether it is proper to call her before the forum state's courts. See
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). The minimum-contacts
requirement may be satisfied if either specific or general jurisdiction exists. Specific jurisdiction
attaches if the cause of action arises out of or relates to the non-resident's contact with the forum
state. Guardian Royal, 815 S.W.2d at 227. The contact between the defendant and the forum
state must have occurred as a result of the defendant's purposeful conduct. Id.

 Smith argues that, other than her trip to Texas in February 1998 to help move the
Reids into a retirement home, every other action she took within the state occurred under her
father's power of attorney as his attorney in fact. The appointment of an attorney in fact creates
an agency relationship. Sassen v. Tanglegrove Townhouse Condominium Assoc., 877 S.W.2d 489,
492 (Tex. App.--Texarkana 1994, writ denied). An agency creates a fiduciary relationship as a
matter of law. Id. Smith, acting as attorney in fact, conducted several transactions with various
Texas residents and institutions involving the property disputed in this cause: she participated in
the drafting of her father's will naming her as representative of the estate and sole beneficiary; she
collected and removed to South Carolina all of her father's financial records; she removed all
property from the safe-deposit box and closed the account; she withdrew all the cash from the
Reids' account at Bank One in Austin and opened two accounts in South Carolina; and she
transferred all of the securities that form the majority of the dispute from Texas to a new account
in South Carolina.

 We note that Mr. Reid was himself under certain obligations after Mrs. Reid died. 
After her death, Mr. Reid acted as a trustee over the community until such time as a qualified
administrator (Lanier) was appointed. See Tex. Prob. Code Ann. § 160 (West 1980) (survivor
is to marshal and take control and preserve the community property); Grebe v. First State Bank
of Bishop, 150 S.W.2d 64, 66-7 (Tex. 1941) (survivor has authority to manage and dispose of
community property for paying of community debts, but not entitled to use funds or community
assets for private use; holds same in trust for benefit of true owners thereof). Moreover, Smith
was intimately involved with the planning of Mr. Reid's estate and the drafting of his will. She
was either personally aware, or should have been aware under her fiduciary responsibility as
attorney in fact, of the applicable community property laws in Texas.

 Smith argues that her status as agent shields her from the personal jurisdiction of
the Texas probate court. We disagree. Smith confuses the nature of jurisdiction with that of
liability. Agency is an affirmative defense to personal liability. See Seale v. Nichols, 505 S.W.2d
251, 254 (Tex. 1974). An agency relationship does not shield an individual from jurisdictional
contacts with a state, only from possible liability flowing from the activities conducted within the
forum state. See Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987). As
attorney in fact, Smith took advantage of the laws of the State of Texas to exercise control over
her father's assets. She purposefully directed her activities toward numerous Texas residents and
institutions, activities that resulted in the removal from the state of the property that is the basis
of the dispute. Furthermore, she was on notice that the property might be subject to the
jurisdiction of the Texas probate court. Under these circumstances, the assertion of personal
jurisdiction over Smith does not offend traditional notions of fair play and substantial justice. We
therefore find that sufficient evidence exists in the record to support the exercise of personal
jurisdiction over Smith in her individual capacity, and overrule her second issue.


Subject-Matter Jurisdiction

 Smith's next issue contends that the Texas probate court either lacked subject-matter
jurisdiction or, alternatively, should have deferred subject-matter jurisdiction to the South Carolina
probate court. She argues that Mr. Reid's property, once removed to South Carolina, was
physically within the in rem jurisdiction of the South Carolina courts prior to the filing of the
application of Mrs. Reid's will for probate. Therefore, she contends the disputed property
formally became in custodia legis of the Richland County Probate Court of South Carolina upon
Mr. Reid's death. And, because these assets were arguably Mr. Reid's separate property or "sole
management" community property, and thus within his power to transfer, the Texas probate court
administering Mrs. Reid's will did not have subject-matter jurisdiction over the disputed property. 
See Tex. Prob. Code Ann. § 177(b) (West 1980) ("The surviving spouse, as surviving partner of
the marital partnership, is entitled to retain possession and control of all community property
which was legally under the sole management of the surviving spouse during the continuance of
the marriage and to exercise over that property all the powers elsewhere in this part of this Code
authorized to be exercised by the surviving spouse when there is no administration pending on the
estate of the deceased spouse."). Alternatively, Smith argues that the Texas probate court abused
its discretion in not deferring subject-matter jurisdiction to the South Carolina probate court in the
interests of comity.

 We make no judgment as to the legitimacy of the process by which Smith, acting
under her father's power of attorney, transferred all of his assets to South Carolina. Thus, we
assume without deciding that the transfer of this property occurred legally. But, as we have
already stated, the property remained burdened with the Texas probate court's jurisdiction to
determine its character, irrespective of the physical transfer of the property. To hold otherwise
would allow probate jurisdiction to be too easily defeated. Smith's argument that the disputed
property was separate property or "sole management" community property, and thus hers to
dispose of as she pleased, puts the cart before the horse. The potential beneficiary of disputed
property is not the proper arbiter of its characterization. The Texas probate court was charged
with that duty.

 Moreover, the Texas probate court's jurisdiction over Mrs. Reid's will formally
began on July 9, 1998, prior to Mr. Reid's death. Thus, the South Carolina probate court's
application of jurisdiction over the disputed property was encumbered by the previous exercise of
the Texas probate court's subject-matter jurisdiction. Under Texas law, if two lawsuits pending
in courts of coordinate jurisdiction concern the same subject matter and parties, the first court to
acquire jurisdiction has the dominant jurisdiction. See Curtis v. Gibbs, 511 S.W.2d 263, 267
(Tex. 1974). The Texas probate court acquired subject-matter jurisdiction both impliedly and
formally before Mr. Reid's death and before the application for probate of his will was filed in the
South Carolina court. Thus, the Texas court retained dominant jurisdiction.

 Smith next argues that the Texas probate court should defer its subject-matter
jurisdiction in favor of the South Carolina court on the basis of comity due to the physical location
of the property within the South Carolina court's in rem jurisdiction. "Comity" is a principle
under which the courts of one state give effect to the laws of another state or extend immunity to
a sister sovereign not as a rule of law, but rather out of deference or respect. Hawsey v. Louisiana
Dep't of Social Servs., 934 S.W.2d 723, 726 (Tex. App.--Houston [1st Dist.] 1996, writ denied). 
We review the trial court's failure to defer its subject-matter jurisdiction on the basis of comity
under an abuse of discretion standard. See InterFirst Bank-Houston v. Quintana Petroleum, 699
S.W.2d 864, 877 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.). A trial court abuses
its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without
reference to any guiding principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). This Court
may not reverse for abuse of discretion merely because we disagree with a decision of the trial
court. Buller, 806 S.W.2d at 226; Downer, 701 S.W.2d at 242.

 We have reviewed at some length the obligation of the Texas probate court upon
the application for probate of Mrs. Reid's will to characterize the property according to Texas law. 
We have stated that the Texas court acquired both implied and formal subject-matter jurisdiction
over the Reids' property to discharge this obligation before the South Carolina probate court's
jurisdiction was activated by Smith. We have likewise examined the personal jurisdiction over
Reid and found it supported by the evidence. Under these circumstances, we cannot say that the
Texas probate court abused its discretion in failing to defer its subject-matter jurisdiction in favor
of the South Carolina court. (10)


The Injunction

 In her final issue presented, Smith argues that the probate court abused its discretion
in issuing the injunction requiring Smith to deposit one-half of the Reids' assets into the registry
of the court pending characterization by the court. She specifically contends that, since the court
erred in exercising personal jurisdiction over her in her individual and representative capacities,
and since the court erred in exercising subject-matter jurisdiction in violation of the general rules
of comity, the issuance of the injunction was in error.

 A court has the inherent power to order the surrender of property held by any party
to the suit. Ex parte Preston, 347 S.W.2d 938, 941 (Tex. 1961). This inherent power enables
the court to preserve its own ability to render effective relief and give effect to its judgment. 
Vannerson v. Vannerson, 857 S.W.2d 659, 674 (Tex. App.--Houston [1st Dist.] 1993, writ
denied) (trial court may issue injunction to temporarily safeguard community property from
encumbrance or transfer pending a final division). Because we have concluded that the exercise
of personal jurisdiction is supported by sufficient evidence and the cause is governed by the
subject-matter jurisdiction of the Texas probate court, that court did not abuse its discretion in
issuing the injunction to maintain the status quo pending a characterization of the Reids' assets at
the time of Mrs. Reid's death. Consequently, we overrule Smith's final issue.


CONCLUSION

 Sufficient evidence exists in the record to support the Texas probate court's
assertion of personal jurisdiction over Smith individually and as representative of her father's
estate. The Texas probate court had subject-matter jurisdiction and did not abuse its discretion
in failing to defer its jurisdiction in favor of South Carolina in accordance with comity. Finally,
the probate court did not abuse its discretion in issuing the temporary injunction. Accordingly,
we affirm the judgment of the probate court.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: July 29, 1999

Publish

1. See Tex. Fam. Code Ann. § 3.003 (West 1998) ("Property possessed by either spouse
during or on dissolution of marriage is presumed to be community property. The degree of proof
necessary to establish that property is separate property is clear and convincing evidence.").
2. Mrs. Reid's will bequeathed to Mr. Reid some tangible personal property, provided he
survived her by ninety days. Because Mr. Reid died within ninety days of Mrs. Reid, this
provision of the will lapsed.
3. South Carolina Probate Code Section 62-3-706 provides that a personal administrator of an
estate shall file "an inventory of property owned by the decedent at the time of his death." This
same section requests a listing of any encumbrances that may exist on the property, and provides
a section for any property owned jointly with another person. See S.C. Prob. Code § 62-3-706.
4. Two days after the injunction issued in Texas, Smith filed a declaratory judgment action in
a South Carolina court requesting a characterization of the disputed property. The Texas court
issued another injunction against Smith to restrain her from participating in the South Carolina
case. Smith continued her participation, and obtained a judgment from the South Carolina court
in January 1999.
5. Smith argued that the correct standard of review to be applied is de novo. We disagree.
6. The jurisdiction of the Texas probate court began on July 9, 1998, at which time the
application for probate was filed. See Tex. Prob. Code Ann. § 8(a) (West 1980) ("[W]hen two
or more courts have concurrent venue of an estate, the court in which application for probate
proceedings thereon is first filed shall have and retain jurisdiction of the estate to the exclusion of
the other court or courts. The proceedings shall be deemed commenced by the filing of an
application averring facts sufficient to confer venue; and the proceeding first legally commenced
shall extend to all of the property of the estate.") (emphasis added).
7. We also note that cash dividends on separately held stock are community property. See
Bakken v. Bakken, 503 S.W.2d 315, 317 (Tex. Civ. App.--Dallas 1973, no writ). Thus, to the
extent that cash dividends from stock held by Mr. Reid before the marriage were reinvested, at
least a fact issue exists as to the characterization of the securities.
8. "[T]he protection from dissipation or transfer of the potential assets of the estate of Lucik
directly bears on the ultimate collection and distribution of such properties pursuant to his effective
will . . . . [U]nder the allegations of the application for preliminary injunctive restraint it was
necessary that the assets in question be protected and preserved until their status could be
determined. Otherwise, the provisions of the successful will could be frustrated and the
enforcement of the jurisdiction of the Probate Court defeated." Lucik v. Taylor, 596 S.W.2d 514,
516 (Tex. 1980) (citing English v. Cobb, 593 S.W.2d 674, 676 (Tex. 1979)).
9. Lanier argues that the Texas probate court obtained jurisdiction over Smith in her individual
and representative capacities through her allegedly tortious conduct in transferring Mr. Reid's
assets to South Carolina, namely by conversion. Because we find jurisdiction through alternative
means, we need not address Lanier's tort arguments.
10. Recognizing that a characterization of the Reids' property under community property
principles could yield Mrs. Reid's estate, at most, one-half of the couple's assets, the Texas
probate court's injunction required the deposit of only half of the transferred property into the
court's registry. Thus, the Texas probate court did yield control over the remainder of Mr. Reid's
estate to the South Carolina court's jurisdiction.


we affirm the judgment of the probate court.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: July 29, 1999

Publish

1. See Tex. Fam. Code Ann. § 3.003 (West 1998) ("Property possessed by either spouse
during or on dissolution of marriage is presumed to be community property. The degree of proof
necessary to establish that property is separate property is clear and convincing evidence.").
2. Mrs. Reid's will bequeathed to Mr. Reid some tangible personal property, provided he
survived her by ninety days. Because Mr. Reid died within ninety days of Mrs. Reid, this
provision of the will lapsed.
3. South Carolina Probate Code Section 62-3-706 provides that a personal administrator of an