**RING POWER SYSTEMS, A Division of Ring Power Corp., Appellant,**

v.

**INTERNATIONAL DE COMERCIO Y CONSULTORIA, S.A., Appellee.**

No. 14–99–01420–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 8, 2001.

George Ravelo Diaz-Arrastia, Houston, for appellants.

J. Robin Lindley, David P. Cotellesse, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices FOWLER and SEYMORE.

## OPINION

SEYMORE, Justice.

This·is an accelerated appeal from the trial court's denial of the special appearance of appellant, Ring Power Systems ("Ring"). *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2000). The underlying suit involves a breach of contract and misrepresentation action brought by appellee, International De Comercio Y Consultoria, S.A. ("International"), for certain representations made by Ring in a sale of power generators. Raising a single point of error, Ring now challenges the trial court's order denying its special appearance. We affirm.

### Background

International, a Guatemalan corporation maintaining a U.S. office in Houston, operates a power and energy production plant under contract with the Guatemalan government utility. As part of one such contract, International, in 1997, became obligated to increase the power generating capacity of its Santa Elena power plant. In order to meet this obligation, Daniel Werner, Vice President of International, examined a previously received brochure from Ring detailing its available power generation modules. Based on the information contained in the brochure, Werner, calling from his Houston office, contacted Ring representative Lyndon Schultz at Ring's offices in Jacksonville, Florida. During this call, the two discussed the cost, warranty, and power specifications which International would require of the advertised units.

Following this initial call, Werner continued negotiating with Schultz by phone. On September 18, 1997, Schultz then faxed to Werner a quotation outlining Ring's offer for the generators. Included in this quotation was a provision rating the power of the two units at a range of 1600 to 1750 kilowatts per hour. Werner subsequently traveled to Ring's office in Jacksonville to continue negotiations.and express his concern regarding the modules' ability to generate power at the quoted levels. After receiving, at its Houston office, results from Ring's load tests of the two units,

International entered into a lease-buy arrangement for the generators. Once installed, however, the two power modules allegedly failed to generate electricity at the capacity advertised and represented by Ring. The trial court denied Ring's special appearance to International's suit. On appeal, Ring argues that its contacts with Texas give rise to neither general nor specific jurisdiction. We disagree.

### Standard of Review

In reviewing a trial court's ruling on a special appearance, we first note that the plaintiff has the initial burden of pleading allegations sufficient to bring the nonresident defendant within the provisions of the Texas long-arm statute. *See C–Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.—Houston [14th Dist.] 1999, no pet.). At the special appearance hearing, however, the nonresident bears the burden of negating all bases of personal jurisdiction. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). Whether the court has personal jurisdiction over a nonresident defendant is a question of law, but the proper exercise of such jurisdiction is sometimes preceded by the resolution of underlying factual disputes. *C–Loc*, 993 S.W.2d at 476. The standard of review for determining the appropriateness of the resolution of those facts is the factual sufficiency of the evidence review, with the reviewing court considering all evidence in the record. *Id.* However, where the record contains no findings of fact or conclusions of law, as here, all questions of fact are presumed to be found in support of the judgment. *Id.* at 477. Finally, this court must affirm the judgment of the trial court on any legal theory finding support in the evidence. *Id.*

### Texas Long Arm Statute and Due Process

 A Texas court may exercise jurisdiction over a nonresident if two conditions are satisfied. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990); *C–Loc*, 993 S.W.2d at 477. The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). While the statute enumerates several specific acts constituting "doing business," it also includes any "other acts that may constitute doing business." *See Schlobohm*, 784 S.W.2d at 357. The "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *See Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). Accordingly, the entire test is reduced to a single question: whether it is consistent with federal due process requirements for Texas to assert personal jurisdiction over Ring. *See id.*

Under the federal test for due process, a state may assert personal jurisdiction over a nonresident defendant if: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with fair play and substantial justice. *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A proper finding of "minimum contacts" requires a specific showing of activity by the nonresident. *Guardian*, 815 S.W.2d at 230. First, the nonresident must have purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* at 474–475, 105 S.Ct. 2174. This requires that the nonresident defendant must have purposefully established minimum contacts with Texas. *Id.* Additionally, there must be a substantial connection between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *Id.* To support a

finding of minimum contacts, a defendant's activities must justify a conclusion that the defendant should reasonably anticipate being haled into the forum court. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

A nonresident defendant's contacts with a forum can give rise to either general or specific jurisdiction. *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996). When a party asserts specific jurisdiction, the cause of action must arise out of or relate to the nonresident defendant's contacts with Texas. *Guardian*, 815 S.W.2d at 230. Allegations of general jurisdiction require that there be continuous and systematic contacts between the nonresident defendant and Texas. *Id.* General jurisdiction requires a showing of substantial activities by the nonresident defendant in Texas. *Id.* Finally, a defendant establishes minimum contacts with a state if either general or specific jurisdiction exists. *See CSR*, 925 S.W.2d at 595.

Assuming that either general or specific jurisdiction is established, a court then evaluates the contacts establishing jurisdiction in light of other legal factors to determine whether a finding of personal jurisdiction comports with principles of fair play and substantial justice. *See id.* at 231. These factors, when appropriate, consist of: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and efficient relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 228. With this standard in mind, we now turn to appellant's issue for review.

### Specific Jurisdiction Analysis

We begin our review of the trial court's denial of Ring's special appearance by determining whether specific jurisdiction over Ring exists. In support of the court's finding of jurisdiction, International alleges that Ring committed tortious acts in Texas. International contends this conduct brought Ring within the reach of the Texas long-arm statute. *See* Tex.Civ.Prac. & Rem.Code Ann. § 17.042(2) (Vernon 1997).

When reaching a decision to exercise or decline jurisdiction based on the defendant's alleged commission of a tort, the trial court should rely only upon the necessary jurisdictional facts and should not reach the merits of the case. *Arterbury v. Am. Bank & Trust Co.*, 553 S.W.2d 943 (Tex.Civ.App.—Texarkana 1977, no writ); Tex.R.Civ.P. 120a. In other words, ultimate liability in tort is not a jurisdictional fact, and the merits of the cause are not at issue. *Portland Sav. & Loan Ass'n. v. Bernstein*, 716 S.W.2d 532, 535 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Accordingly, where the plaintiff alleges an action in tort that arose out of an act committed in Texas, the necessary proof is only that the purposeful act was committed in this State. *Arterbury*, 553 S.W.2d at 947. Our review of the pleadings show that International alleged negligent misrepresentations by Ring regarding the electric generating capacity of its power modules. International further contends that Ring communicated these representations to International's Houston office via phone and fax. Therefore, we find that International supplied the necessary jurisdictional facts in support of its tort claim.

### Minimum Contacts

The next step of our inquiry requires us to ask whether Ring's allegedly tortious representations comprise the minimum contacts necessary to subject it to the jurisdiction of Texas courts. We first note that where an individual commits a tort in whole or in part in Texas, he satisfies the jurisdictional requirements of the Texas long-arm statute. Tex.Civ.Prac. & Rem.Code Ann. § 17.042(2) (Vernon 1997).

International has alleged that Ring made misrepresentations regarding the generation capacity of its power modules. It further alleges that said misrepresentations were received, in whole or in part, at the Houston, Texas office of International. A party commits the tort of negligent misrepresentation in Texas when reliance thereon occurred in Texas. *See Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.* 835 S.W.2d 645, 648 (Tex.App.—Houston [14th Dist] 1992, no writ). The same is true even when a party makes the misrepresentation outside of Texas without initiating the communication. *Id.* Because International has alleged a misrepresentation committed partially in Texas, it has satisfied the requirement for jurisdiction under the Texas long-arm statute.

■ Having found that Ring's contacts with Texas subject it to Texas long-arm jurisdiction, we now must determine whether this assertion of personal jurisdiction is consistent with federal due process. *See Guardian*, 815 S.W.2d at 230. As stated previously, this first requires a finding that the defendant have purposefully established minimum contacts with the forum state. *See id.* A review of the record reveals sufficient evidence to support a conclusion that Ring purposefully communicated the alleged misrepresentations about its generators to International's Houston office by phone and facsimile. Based on these facts, we find that Ring's contacts with Texas were not random or fortuitous; rather, Ring purposefully established contact with Texas.

While purposeful contact with the forum state is an important component of the minimum contacts analysis, equally important is the requirement that there be a substantial connection between the nonresident defendant and the forum state arising from such contact. *See id.* In other words, as a result of the nonresident's contacts, he must be able to foresee or anticipate being haled into the forum court. *Id* at 227. In the present case, a strong nexus exists between the tort that occurred in Texas and the contact with Texas. International contends that it relied to its detriment on the alleged false information provided by Ring in its facsimiles and phone calls. We find sufficient evidence in the record to support the trial court's conclusion that Ring could reasonably foresee International's reliance on the allegedly false representations. Furthermore, Ring purposefully availed itself of the benefits and protections of Texas law when it transmitted marketing information to Houston, Texas. *See Mem'l*, 835 S.W.2d at 648. Therefore, we find sufficient evidence in the record to support a conclusion that Ring should reasonably have anticipated being haled into a Texas court. *See id.* (finding that Texas courts had specific jurisdiction over a New York insurer whose only contact with Texas consisted of a misrepresentation made over the phone to a Texas hospital).

### Fair Play and Substantial Justice

Turning to the final step of our jurisdictional inquiry, we now ask whether our finding of personal jurisdiction over Ring comports with traditional notions of fair play and substantial justice. *See Guardian*, 815 S.W.2d at 225. While conducting this inquiry, we bear in mind that only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.* at 231. With this standard in place, we now apply the relevant fair play and substantial justice factors.

#### Burden on the Defendant

■ Ring maintains that subjecting it to suit in Texas would be burdensome as all of its employees, representatives, and witnesses are located in Florida and because the generators forming the basis of the suit are located in Guatemala. Regarding Ring's Florida residency, we note that distance alone is not ordinarily sufficient to defeat jurisdiction as " 'modern transporta-

tion and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity.'" *See id.* (quoting *McGee v. Int' Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223, (1957)). In fact, requiring Ring to defend a suit in Texas does not appear overly burdensome as the record demonstrates that twenty-two percent of Ring's employees have previously traveled to Texas to attend trade shows and seminars. Moreover, because the essence of this case involves misrepresentations made by a single Ring employee, the number of witnesses required to travel to Texas does not appear significant. Coupled with the fact that a trial in Florida would likewise present a burden to International, we find that this factor weighs in favor of Texas.

*Forum State's Interest in Adjudicating the Dispute*

Ring argues that Texas has no interest in adjudicating International's suit because neither party is a resident of Texas. Also, Ring argues that International was not registered to do business in Texas and has not designated an agent for service of process. A corporation's residence is the place where its corporate affairs are conducted-its principal place of business. *See Nat'l Truckers Serv., Inc. v. Aero Sys., Inc.* 480 S.W.2d 455, 458 (Tex.Civ.App.— Fort Worth 1972, writ ref'd, n.r.e.). Daniel Werner, vice-president of International, stated in an affidavit that International's principal place of business is Guatemala. Accordingly, we find that International is a resident of Guatemala; nevertheless, there is sufficient evidence to support the trial court's conclusion that Texas has an interest in adjudicating the dispute.

A review of the record shows that the majority owner of International is Houston-based Arena Power Company—the general partner of Arena Power, L.P. Appellant Ring communicated the alleged misrepresentation to International in this state. International, while not a resident, has an office in Texas from which it supervises all aspects of its U.S. and Guatemalan operations and development. We conclude that Texas has a significant interest in protecting a nonresident business, majority-owned by a Texas resident, when a tort is allegedly committed in Texas against the nonresident business. Based on our findings under the applicable factors, we hold that the exercise of jurisdiction over Ring by a Texas court does not offend traditional notions of fair play and substantial justice. Because we find that the trial court possessed specific jurisdiction over Ring, we need not determine whether general jurisdiction existed. The trial court's order denying Ring's special appearance is hereby affirmed.