TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00675-CV






Steve Augustino and Laura Augustino, Appellants


v.


John Handling, Individually; and John Handling as Owner of Handling Trailer Sales,
Appellees






FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT

NO. 26,659, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING 






 Appellants Steve Augustino and Laura Augustino sued appellee John Handling in his
individual capacity and as the owner of Handling Trailer Sales for defects in a horse trailer they
purchased from him. Handling filed a special appearance, which the trial court granted. See Tex.
R. Civ. P. 120a. In four points of error, the Augustinos appeal the trial court's order on the grounds
that the trial court erred in (1) granting the special appearance and (2) failing to grant the Augustinos'
request for a continuance to permit further discovery. We will reverse and remand.


FACTUAL AND PROCEDURAL BACKGROUND

 Steve and Laura Augustino own and operate the Four Seasons Ranch in Milam
County. They train and sell horses and mules. Handling owns and operates Handling Trailer Sales
in Blakesburg, Iowa, where he customizes trailers and resells them to the public. The Augustinos 
wished to purchase a new horse trailer, particularly one that featured living quarters. The record is
unclear as to which party initiated the business negotiations; nevertheless, the parties contacted one
another on several occasions. 

 In the course of their dealings, Handling mailed pictures of and information
concerning the trailer to the Augustinos' residence. He also mailed a retail installment contract and
a security agreement to them. Handling and Steve Augustino spoke on the telephone about the
specifics of the trailer. Finally, Handling faxed a consumer credit application and a purchase order
to the Augustinos. 

 These negotiations resulted in the purchase of a customized Softouch trailer, which
Handling financed for the Augustinos. Kathy Christinson brought the trailer to Steve Augustino and
his associate in Plainview. The record is unclear as to whether Christinson served as an agent for
Handling or for the Augustinos. Furthermore, the extent to which Christinson facilitated the
transaction is vague.

 Upon delivery, the Augustinos immediately noticed several defects in the horse
trailer. The propane tank was improperly secured and it separated from the trailer after the
Augustinos drove five miles. Several recreational vehicle and trailer dealers have refused to repair
this defect because the entire propane gas delivery system was improperly installed. The Augustinos
cannot use the customized trailer for its intended purpose and have been informed that the trailer
poses a hazard to themselves, their animals, and other travelers. 

 The Augustinos brought suit for violation of the Texas Deceptive Trade
Practices--Consumer Protection Act ("DTPA"), (1) breach of contract, and breach of warranties
against Handling. Handling, a nonresident defendant, filed a special appearance, which the trial
court granted. On appeal, the Augustinos assert four points of error: (1) the trial court erred in
applying the applicable law to the facts as presented in Handling's pleadings and through the live
testimony of both parties at the special appearance hearing; (2) the evidence presented by Handling
was insufficient to negate all bases of personal jurisdiction; (3) the quality and nature of Handling's
contacts with Texas were purposeful and the exercise of jurisdiction over Handling comports with
fair play and substantial justice; and (4) the trial court erred by failing to grant the Augustinos'
request for further discovery. The first three points of error are separate elements of a single question
and will be addressed together. 


STANDARD OF REVIEW

 When a defendant challenges a court's exercise of personal jurisdiction through a
special appearance, he carries the burden of negating all bases of personal jurisdiction. Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Siskind v. Villa Found. for Educ., Inc.,
642 S.W.2d 434, 438 (Tex. 1982); Nikolai v. Strate, 922 S.W.2d 229, 236 (Tex. App.--Fort Worth
1996, writ denied). When a trial court rules on a special appearance, the losing party should request
that the court make findings of fact according to Texas Rule of Civil Procedure 296. Tex. R. Civ.
P. 296; Runnells v. Firestone, 746 S.W.2d 845, 849 (Tex. App.--Houston [14th Dist.] 1988, writ
denied). Absent such findings, we view the trial court's judgment as impliedly finding all the
necessary facts to support its judgment. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). In
the instant cause, appellants have made no request for findings of fact and conclusions of law from
the trial court, and none were filed. See Tex. R. Civ. P. 296. We therefore presume that the trial
court made all necessary findings to support its judgment. See Garner v. Furmanite Austl. Pty., Ltd.,
966 S.W.2d 798, 802 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). Where a complete
statement of facts appears in the record as here, however, these implied findings are not conclusive
and an appellant may challenge the sufficiency of the evidence. See Roberson v. Robinson, 768
S.W.2d 280, 281 (Tex. 1989). Where such points are raised, the standard of review to be applied
is the same as that to be applied in the review of jury findings or a trial court's findings of fact. Id.

 When in personam jurisdiction is challenged, we review all the evidence. Nikolai,
922 S.W.2d at 236; Hotel Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 632 (Tex.
App.--Dallas 1993, writ denied). We apply a factual sufficiency standard in reviewing the evidence,
not a de novo review. Nikolai, 922 S.W.2d at 236; Hotel Partners, 847 S.W.2d at 632; NCNB Tex.
Nat'l Bank v. Anderson, 812 S.W.2d 441, 443-44 (Tex. App.--San Antonio 1991, no writ). When
reviewing a fact finding to determine the factual sufficiency of the evidence, we must consider and
weigh all the evidence and should set aside the judgment only if the evidence is so weak as to make
the finding clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986);
In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); Ronnie Loper Chevrolet-Geo, Inc. v. Hagey,
999 S.W.2d 81, 84-85 (Tex. App.--Houston [14th Dist.] 1999, no pet.).


DISCUSSION

Texas Long-Arm Statute

 A Texas court may exercise jurisdiction over a nonresident if two conditions are
satisfied: first, the Texas long-arm statute must authorize the exercise of jurisdiction; second, the
exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due
process. Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). The Texas long-arm statute
allows a court to exercise personal jurisdiction over a nonresident defendant who does business in
the state. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997). Although the long-arm statute
enumerates three specific acts which constitute "doing business," it also states that there are "other
acts that may constitute doing business." Id. Such broad language allows the "doing business"
requirement of the long-arm statute to reach as far as the federal constitutional requirements of due
process will allow. Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 226 (Tex. 1991); U-Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977). 
Thus, if the exercise of personal jurisdiction comports with federal due process requirements, the
requirements of the Texas long-arm statute are satisfied. Guardian, 815 S.W.2d at 226.


Federal Due Process

 Federal constitutional due process requirements place limits on a state's power to
assert personal jurisdiction over a nonresident defendant. Helicopteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 413-14 (1984). These due process requirements are divided into two
parts: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise
of jurisdiction comports with fair play and substantial justice. Burger King v. Rudzewicz, 471 U.S.
462, 475-76 (1985). 

 The minimum contacts analysis requires that the nonresident purposefully availed
herself of the privilege of conducting activities within the forum state, and thus has invoked the
benefits and protections of its laws. Id. at 474-75. Furthermore, there must be a substantial
connection between the nonresident defendant and Texas that has arisen because of the purposeful
availment of privileges. See id. at 475. Based on the contact with the forum state, a nonresident
defendant must reasonably anticipate being haled into a Texas court. Project Eng'g USA Corp. v.
Gator Hawk, Inc., 833 S.W.2d 716, 721 (Tex. App.--Houston [1st Dist.] 1992, no writ); General
Elec. Co. v. Brown & Ross Int'l Distrib., Inc., 804 S.W.2d 527, 530 (Tex. App.--Houston [1st Dist.]
1990, writ denied).

 The United States Supreme Court has refined the minimum contacts analysis into
specific and general jurisdiction. See Guardian, 815 S.W.2d at 227. The Augustinos asserted only
specific jurisdiction in their pleadings; therefore we will not discuss general jurisdiction.

 When specific jurisdiction is asserted, the cause of action must arise out of or relate
to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts
requirement. Id. However, the contact must have resulted from the nonresident defendant's
purposeful conduct and not the unilateral activity of the plaintiff or others. Id. When specific
jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the
defendant, the forum, and the litigation. Id. at 228. If specific jurisdiction exists, a court must then
determine whether a finding of personal jurisdiction is commensurate with notions of fair play and
substantial justice. Id. at 231. 

 The analysis of whether the exercise of jurisdiction comports with "fair play and
substantial justice" consists of five factors: (1) the burden on the defendant; (2) the interests of the
forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and
efficient relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution
of controversies; and (5) the shared interest of the several states in furthering fundamental
substantive social policies. Id. at 228. If the exercise of jurisdiction does not offend traditional
notions of fair play and substantial justice, then jurisdiction is appropriate. The case at bar requires
only an analysis of the first three factors.



 Minimum Contacts


 We must first consider the trial court's denial of specific jurisdiction over Handling
individually and as owner of Handling Trailer Sales. Specific jurisdiction refers to jurisdiction in
which the cause of action arises out of, or is substantially related to, the actual contact with the
forum. Memorial Hosp. Sys. v. Fisher Ins. Agency, 835 S.W.2d 645, 649 (Tex. App.--Houston
[14th Dist.] 1992, no writ). Thus, in analyzing minimum contacts, it is not the number, but rather
the quality and nature of the nonresident's contacts with Texas that are important. Id. 

 First, Handling falls within the reach of the Texas long-arm statute because he
"contract[ed] by mail or otherwise with a Texas resident and either party is to perform the contract
in whole or in part in [Texas]." Tex. Civ. Prac. & Rem. Code § 17.042(1). Handling sought to sell
a customized horse trailer to the appellants. In order to do this, he sent a sales brochure and pictures
of the horse trailer through the mail. The parties also engaged in telephone conversations in order
to solidify the deal. Handling sent the consumer credit application and the retail installment
agreement by facsimile to the Augustinos. Finally, the trailer was delivered to the Augustinos in
Plainview. These facts constitute evidence sufficient to assert that Handling purposefully availed
himself of the privilege of conducting activities within the state of Texas. 

 The facts of this case are similar to those in Ring Power Systems v. International de
Comercio y Consultoria, S.A., 39 S.W.3d 350 (Tex. App.--Houston [14th Dist.] 2001, no pet.). 
Ring Power involved a breach of contract and misrepresentation action for the sale of defective
power generators. Id. at 351. In Ring Power, business negotiations began when International, a
Guatemalan corporation with an office in Houston, received a brochure from Ring Power Systems,
a Florida corporation. Id. The parties discussed issues of cost, warranty, and power specifications
through telephone and facsimile correspondence between Jacksonville, Florida, and Houston. Id. 
International ultimately purchased two power generators, which did not work properly. Id. at 352. 
As a result, International filed suit. The court of appeals held that these contacts were sufficient to
invoke Texas long-arm jurisdiction. Id. at 354. We agree with this conclusion.

 The case at bar also resembles N. K. Parrish, Inc. v. Schrimscher, 516 S.W.2d 956,
958-59 (Tex. Civ. App.--Amarillo 1974, no writ). Schrimscher involved a breach of contract action
brought by a Texas corporation against Fred Schrimscher, a New Mexico resident. Id. at 957. 
Parrish agreed to purchase wheat from Schrimscher. The contract, formed through telephone and
mail correspondence, provided that Parrish would accept the wheat in Albuquerque, New Mexico. 
Id. at 957. Parrish later filed suit, alleging that Schrimscher had failed to deliver the minimum
amount of wheat called for by the contract. Id. at 958. Reversing an order granting Schrimscher's
special appearance, the court of appeals held that Schrimscher had sufficient minimum contacts with
Texas. Id. at 959. Although Schrimscher was never physically present in Texas, he purposefully
entered into a contract that was partially performable in Texas. Id. at 959. Furthermore,
Schrimscher could reasonably foresee the need to invoke the benefits and protections of the law of
Texas, particularly with respect to Parrish's obligation to perform under the contract in Texas. Id.
at 959. We also agree with this conclusion.

 We must next ask whether the alleged violation of the DTPA constitutes the
minimum contacts necessary to subject Handling to specific personal jurisdiction in Texas. First,
the jurisdictional requirements of the Texas long-arm statute are satisfied if the nonresident
defendant "commits a tort in whole or in part in [Texas]." Tex. Civ. Prac. & Rem. Code
§ 17.042(2). The Augustinos allege that Handling made certain misrepresentations and omissions
about the trailer during the period of correspondence. They further allege that they detrimentally
relied upon Handling's information regarding the quality of the trailer and accepted the trailer
without ever leaving Texas. In a negligent misrepresentation case, if the representation occurs
outside the state of Texas, a tort is committed in Texas if reliance thereon occurred in Texas. Ring
Power, 39 S.W.3d at 354; Fisher, 835 S.W.2d at 648 (holding that hospital that admitted patient on
the basis of single, false representation of insurance coverage could assert long-arm jurisdiction for
negligent misrepresentation). A tort may occur even if the party made the misrepresentation or
omission outside of Texas without initiating the communication. Fisher, 835 S.W.2d at 648. 
Because the appellants have alleged a tort committed in part in Texas, the requirement for
jurisdiction under the Texas long-arm statute has been satisfied. See Ring Power, 39 S.W.3d at 353-54; Fisher, 835 S.W.2d at 648.

 In analyzing Handling's minimum contacts with the state of Texas, we must be
mindful of the standard of review, which is a sufficiency of the evidence review. See Roberson, 768
S.W.2d at 281. When reviewing the factual sufficiency of the evidence, we consider all the evidence
and should set aside the judgment only if the evidence is so weak as to make the finding clearly
wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Ronnie Loper Chevrolet-Geo,
Inc. v. Hagey, 999 S.W.2d 81, 84-85 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Even if we
view the evidence in Handling's favor, minimum contacts are nonetheless satisfied. Handling
mailed a sales brochure and pictures of the horse trailer to the Augustinos, faxed a consumer credit
application and retail installment agreement to them, financed the trailer for them, and engaged in
numerous telephone conversations with them. These business activities were purposefully directed
toward and were substantially related to the state of Texas. See Ring Power, 39 S.W.3d at 354. 
After considering and weighing all of the evidence in the record, we conclude that the trial court's
finding that Handling did not have sufficient minimum contacts is clearly wrong and manifestly
unjust. 

 Having determined that Handling's actions satisfy the minimum contacts analysis,
we must next decide whether Handling, a nonresident defendant, could have reasonably anticipated
being haled into a Texas court. See Guardian, 815 S.W.2d at 227. The record reveals a nexus
between the alleged tort that occurred in part in Texas and the contact with Texas: the Augustinos
detrimentally relied on Handling's representations, and Handling could reasonably foresee that such
representations would be relied upon by the Augustinos. The fact that the Augustinos purchased the
trailer shows that they seriously relied on Handling's representations. Due to these dealings,
Handling should have foreseen the possibility of being haled into a Texas court. Handling's
misrepresentations and omissions allow the inference that any injurious consequence of such actions,
whether physical or economic, would be felt by the residents in their domicile. See Fisher, 835
S.W.2d at 650.



 Fair Play and Substantial Justice


 The final step of our jurisdictional analysis is to ask whether the assertion of personal
jurisdiction comports with traditional notions of fair play and substantial justice. See Guardian, 815
S.W.2d at 225. We acknowledge that only in rare cases will the exercise of jurisdiction not comport
with fair play and substantial justice when the nonresident defendant has purposefully established
minimum contacts with the forum state. Id.; see also Schlobohm, 784 S.W.2d at 358 (noting that
it becomes less likely that exercise of jurisdiction will fail fair play analysis).

 The first factor in this analysis is whether subjecting the nonresident defendant to suit
in Texas would be burdensome on the defendant. First, distance alone is not ordinarily sufficient
to defeat jurisdiction as "modern transportation and communication have made it much less
burdensome for a party to defend himself in a state where he engages in economic activity." 
Guardian, 815 S.W.2d at 231 (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223
(1957)). In addition, the case at bar does not include a large number of litigants and witnesses, and
so the nonresident defendant will not incur significant financial burdens. Finally, there is no
evidence that submitting to Texas's jurisdiction would be more burdensome to Handling than
submitting to Iowa's jurisdiction.

 The next factor to consider is the forum state's interest in adjudicating the dispute. 
The mere fact that Handling is not physically located in Texas is not persuasive in deciding personal
jurisdiction. It is an inescapable fact of modern commercial life that a substantial amount of business
is transacted solely by mail and wire communications across state lines, thus obviating the need for
physical presence within the state in which business is conducted. See Burger King, 471 U.S. at 476. 
Handling's lack of physical presence in Texas is not the crux of the matter; rather, it is significant
that Handling contacted the Augustinos at their domicile via telephone conversations and facsimile
transmissions. Texas courts have an interest in cases where there is an alleged tort arising out of
deceptive business practices. See Ring Power, 39 S.W.3d at 355. According to the record, the
defective trailer is not only less useful to the appellants, but is also a potential road hazard to other
Texans. The state of Texas undoubtedly has an interest in adjudicating matters involving products
that could pose physical and economic threats to its citizens.

 Finally, the Augustinos have a legitimate interest in convenient and effective relief. 
See Guardian, 815 S.W.2d at 231. They received representations about the trailer and completed
the contract at their private residence. They also received their trailer in Texas. These facts, as
stated above, make it reasonably foreseeable that Handling could be brought before a Texas court
for his alleged negligence. We sustain the Augustinos' first three points of error.


Request for Further Discovery

 The Augustinos' last point of error is that the trial court erred in refusing to grant their
motion for continuance to permit further discovery. Because we have determined that the trial court
has personal jurisdiction over Handling, we need not reach the Augustinos' final point of error.


CONCLUSION

 Having concluded that Handling has sufficient contacts with Texas to establish
personal jurisdiction, we reverse the trial court's order granting Handling's special appearance, and
remand the cause for further proceedings.



 

 David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Reversed and Remanded

Filed: July 26, 2001

Do Not Publish
1. Tex. Bus. & Com. Code Ann. § 17.46 (West 1987 & Supp. 1998).



tial justice. See Guardian, 815
S.W.2d at 225. We acknowledge that only in rare cases will the exercise of jurisdiction not comport
with fair play and substantial justice when the nonresident defendant has purposefully established
minimum contacts with the forum state. Id.; see also Schlobohm, 784 S.W.2d at 358 (noting that
it becomes less likely that exercise of jurisdiction will fail fair play analysis).

 The first factor in this analysis is whether subjecting the nonresident defendant to suit
in Texas would be burdensome on the defendant. First, distance alone is not ordinarily sufficient
to defeat jurisdiction as "modern transportation and communication have made it much less
burdensome for a party to defend himself in a state where he engages in economic activity." 
Guardian, 815 S.W.2d at 231 (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223
(1957)). In addition, the case at bar does not include a large number of litigants and witnesses, and
so the nonresident defendant will not incur significant financial burdens. Finally, there is no
evidence that submitting to Texas's jurisdiction would be more burdensome to Handling than
submitting to Iowa's jurisdiction.

 The next factor to consider is the forum state's interest in adjudicating the dispute. 
The mere fact that Handling is not physically located in Texas is not persuasive in deciding personal
jurisdiction. It is an inescapable fact of modern commercial life that a substantial amount of business
is transacted solely by mail and wire communications across state lines, thus obviating the need for
physical presence within the state in which business is conducted. See Burger King, 471 U.S. at 476. 
Handling's lack of physical presence in Texas is not the crux of the matter; rather, it is significant
that Handling contacted the Augustinos at their domicile via telephone conversations and facsimile
transmissions. Texas courts have an interest in cases where there is an alleged tort arising out of
deceptive business practices. See Ring Power, 39 S.W.3d at 355. According to the record, the
defective trailer is not only less useful to the appellants, but is also a potential road hazard to other
Texans. The state of Texas undoubtedly has an interest in adjudicating matters involving products
that could pose physical and economic threats to its citizens.