Affirmed and Opinion filed December 12, 2002









Affirmed and Opinion filed December 12, 2002.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00240-CV

____________

 

CHARLES R. WEBER COMPANY, INC.,
Appellant

 

V.

 

BACK-HAUL BULK CARRIERS, INC.,
Appellee

 



 

On
Appeal from the 151st District Court

Harris County, Texas

Trial
Court Cause No. 00-40829

 



 

O
P I N I O N

This
is an interlocutory appeal from the denial of a special appearance.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(7) (Vernon Supp. 2002).  Because appellant failed to negate the bases
for personal jurisdiction alleged by appellee, we
affirm the trial court=s order.

                              Factual and Procedural Background








This case arises from a dispute over the drafting of a charter
party agreement.  Back-Haul Bulk
Carriers, Inc., a Texas corporation with its principal place of business in
Harris County, Texas, was the disponent owner[1]
of a bulk cargo vessel.  Seeking a cargo
to transport, Back-Haul contacted Charles R. Weber Company, Inc., a Connecticut
shipbroker and marine consulting firm with its only office in Greenwich,
Connecticut.  Weber located Eastbound
Navigation Co., a Chinese company that wished to charter the vessel for
delivery of over 100,000 metric tons of crude oil from Oman to a port near
Singapore.  Weber then drafted a charter
party agreement (the ACharter@) chartering the vessel to Eastbound.  A dispute arose between Back-Haul and
Eastbound, and Back-Haul tried to commence arbitration proceedings against
Eastbound as provided in the Charter. 
Following a hearing in London, however, the arbitration tribunal ruled
there was no agreement between Back-Haul and Eastbound because the Charter
purported to be between Eastbound and R.B. Falcon, Inc., the vessel=s
registered owner, rather than Back-Haul, the disponent
owner.

Back-Haul
then filed suit in Texas against Weber, alleging breach of contract, breach of
warranty, negligence, DTPA violations, fraud, and negligent
misrepresentation.  Back-Haul later
amended its petition to claim tortious interference
with a contract or a prospective business relationship.  Weber filed a special appearance.  The trial court denied Weber=s
special appearance, and Weber brought this interlocutory appeal.

                                                     Standard of Review

The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident defendant within the personal jurisdiction of a Texas court.  BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  A defendant challenging the court=s
assertion of personal jurisdiction must negate all jurisdictional bases.  Id.








Whether
a court has personal jurisdiction over a defendant is a question of law, which
we review de novo.  Id. at
794.  However, the trial court frequently
must resolve questions of fact before deciding the jurisdiction question.  Id. 
When, as here, the trial court does not issue findings of fact and
conclusions of law with its special-appearance ruling, all facts necessary to
support the judgment and supported by the evidence are implied.  Id. at 795.  When the appellate record includes both the
reporter=s
and clerk=s records, however, these implied findings are not conclusive
and may be challenged for legal and factual sufficiency.  Id.

                                                   Personal Jurisdiction

The
Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a
nonresident defendant that does business in Texas.  See Tex.
Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon 1997 & Supp. 2002).  The broad language of the Adoing
business@
requirement in section 17.042 permits the statute to reach as far as the
federal constitutional requirements of due process will allow.  Guardian Royal Exch. Assur.,
Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).  Thus, we rely on precedent from the United
States Supreme Court and other federal courts, as well as Texas decisions, to
determine whether the assertion of personal jurisdiction is consistent with the
requirements of due process.  BMC
Software, 83 S.W.3d at 795.

Personal
jurisdiction over a nonresident defendant is constitutional when two conditions
are met: (1) the defendant has established minimum contacts with the forum
state and (2) the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice.  Id.  A nonresident defendant that has Apurposefully
availed@
itself of the privileges and benefits of conducting business in the forum state
has sufficient contacts to confer personal jurisdiction.  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474B76,
105 S. Ct. 2174, 2183B84 (1985)).  A defendant
should not be subject to jurisdiction based on random, fortuitous, or
attenuated contacts.  Id. (citing Burger
King, 471 U.S. at 475, 105 S. Ct. at 2183). 
Furthermore, the nonresident=s contacts must result from its own purposeful activity and not
the unilateral activity of the plaintiff or a third party.  See Guardian Royal, 815 S.W.2d
at 227. 








The
defendant=s contacts can give rise to either specific or general
jurisdiction.  Specific jurisdiction is
established if the plaintiff=s claim arises out of or relates to the defendant=s
contact with the forum state.  Id.  In contrast, general jurisdiction exists when
there are continuous and systematic contacts between the defendant and the
forum state, even if the plaintiff=s claim does not arise from or relate to activities conducted
within the forum state.  Id. at
228.

                                                             Specific
Jurisdiction

We
first examine whether Weber=s contacts with Texas are sufficient to support specific
jurisdiction.  To establish specific
jurisdiction, the nonresident defendant=s activities must have been purposefully directed to the forum
state and the litigation must result from alleged injuries that arise from or
relate to those activities.  Id.  In its petition, Back-Haul alleges that AWeber
represented to [Back-Haul] that a valid Charter Party agreement had been made
between [Back-Haul] and Eastbound.@  Back-Haul further
alleges this representation serves as a basis for its DTPA, fraud, and
negligent-misrepresentation claims. 
Although the petition does not specify where the representation
occurred, elsewhere in the petition Back-Haul alleges that Aall
or a substantial part of the events and omissions giving rise to [Back-Haul=s]
claims occurred in Harris County.@  Thus, Back-Haul has satisfied
its initial burden of bringing Weber within the trial court=s
jurisdiction, and the burden shifts to Weber to negate jurisdiction.  See BMC Software, 83 S.W.3d at
793.








Weber
first claims specific jurisdiction over it cannot be based on Back-Haul=s
tort claims because they all arise out of an alleged contract.  We disagree. 
In addition to its various tort claims, Back-Haul also alleges damages
stemming from Weber=s alleged breach of an agreement to draft the Charter between
Back-Haul and Eastbound.  However, Weber=s
alleged conductCrepresenting to Back-Haul that it had prepared a Charter
between Back-Haul and EastboundCgives rise to potential liability independent of whether a
contract exists between Back-Haul and Weber. 
To the extent Back-Haul=s claims are based on this alleged misrepresentation, they
properly sound in tort.  See Southwestern
Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494
(Tex. 1991).  Back-Haul alleges it relied
on Weber=s
representation and suffered damages, including commissions paid to Weber and
funds spent in connection with the vessel=s voyage to Oman.  We
conclude that Back-Haul=s tort claims are independent from the alleged contract between
itself and Weber.

Next,
Weber asserts that because the alleged contacts consist of nothing more than
telephone calls and faxes, they are insufficient to support specific jurisdiction.  This court has consistently held that even a
single telephone call, during which a misrepresentation was directed into Texas
and relied on in Texas, satisfies the Aminimum contacts@ prong of the jurisdictional analysis under specific
jurisdiction.  See Ring Power
Sys. v. International de Comercio y Consultoria, S.A., 39 S.W.3d 350, 354 (Tex. App.CHouston
[14th Dist.] 2001, no pet.); Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,
835 S.W.2d 645, 648 (Tex. App.CHouston [14th Dist.] 1992, no writ).  Here, the evidence supports a finding that
Weber knew Back-Haul was located in Texas. 
Back-Haul presented evidence that Weber initiated the telephone call to
Texas during which the alleged misrepresentation was made.  The alleged misrepresentation in this call
forms the basis of Back-Haul=s claims for DTPA violations, fraud, and negligent
misrepresentation.  When a defendant
sends false information into a state, knowing it will be relied on by a
resident of that state, there is a foreseeable consequence of direct economic
injury to that resident in that state.  Memorial
Hosp. Sys., 835 S.W.2d at 650.  The
record contains sufficient evidence to support the conclusion that Weber
purposefully established minimum contacts with Texas.

Finally,
Weber argues there is no evidence that Weber ever represented that Back-Haul
was a party to the Charter.  Thus,
according to Weber, there is no connection between these alleged contacts with
Texas (the phone calls) and Back-Haul=s tort claims.  Weber
points to paragraph 7 of the affidavit of Don Dykstra, Back-Haul=s
owner, in which he states the following:








Mr. Alexandrou [a Weber employee]
eventually telephoned me at my office in Houston, Texas, and informed me that a
proper Charter Party Agreement had been finalized.  I relied upon his representation(s),
including but not limited to his representation that a proper and enforceable
Charter Party Agreement was in place, and readied the [vessel] for the cargo.

Weber
claims that because this paragraph never refers to the Charter as being Abetween
Back-Haul and Eastbound,@ there is no evidence of any alleged misrepresentation that
could serve as the basis for Back-Haul=s claims.  However, in
paragraph 5 of the affidavit, Dykstra states that, in an earlier conversation, Alexandrou informed him that Aonce negotiations were finalized, he would draw up a proper
Charter Party Agreement between Back-Haul and Eastbound, the owner of the
cargo.@  One can reasonably infer that the Aproper
Charter Party Agreement@ referred to in paragraph 7 is the same as the Aproper
Charter Party Agreement between Back-Haul and Eastbound@
referred to in paragraph 5.  Accordingly,
there was sufficient evidence of a substantial connection between the alleged
statement directed to Dykstra in his office in Houston, Texas, and Back-Haul=s
DTPA, fraud, and negligent-misrepresentation claims.

                                                             General
Jurisdiction

Next,
we examine whether Weber has sufficient contacts to support general
jurisdiction.  General jurisdiction
exists when a defendant=s contacts with a forum are continuous and systematic, a more
demanding minimum-contacts analysis than specific jurisdiction.  American Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 807 (Tex. 2002). 
Back-Haul alleges in its petition that Weber Ahas
systematic and continuing contacts with Texas.@  We therefore determine
whether Weber met its burden of establishing that its contacts with Texas were
not continuous and systematic so that an assertion of general jurisdiction
would be improper.  See id.  Our analysis requires that we look to the
quality, not quantity, of Weber=s contacts with Texas.  See
id. at 809B10.  Furthermore, we do
not view each contact in isolation, but rather we carefully examine all
contacts for proof of a pattern of continuing and systematic activity.  Id. at 809.








Weber
points to several facts in support of its claim that Weber=s
contacts are insufficient to support general jurisdiction.  Weber is not incorporated in Texas, nor is it
licensed to do business in Texas. Weber does not maintain an office in Texas,
and it has no mailing address or telephone listing in Texas.  Weber has never had employees in Texas.  Weber does not own, lease, rent, operate, or
maintain any real property in Texas. 
Weber has no bank accounts in Texas, and it has never owed or paid taxes
in Texas.

Weber
admits, however, that it does have contacts with Texas.  In addition to its dealings with Back-Haul,
Weber=s
representatives travel to Texas ten to twelve times per year on business.  According to Thomas Germain,
one of Weber=s owners and directors, these trips are for A[s]oliciting business, establishing new clients or
entertaining existing clients.  Stren[g]thening relationships in
the pursuit of doing business.@  Germain
testified that Weber has possibly twenty-two clients with a place of business
or contact point in Texas.  According to Germain, Weber currently has approximately 690 files in
which Weber acted as broker or agent for an entity that resides or operates in
Texas, and it has an additional 284 files for which an element of the subject
transaction related to Texas in some way. 
Germain admits that Weber=s
relationships with its clients are Aongoing@ and that Weber communicates with entities in Texas by phone or
e-mail on a daily basis.








Based
on our review of Weber=s contacts with Texas, we conclude that the exercise of
personal jurisdiction based on general jurisdiction is constitutionally
permissible.  The fact that Weber has no
permanent physical presence in Texas is not dispositive.  See Burger King, 471 U.S. at
476, 105 S. Ct. at 2184 (A[I]t is an inescapable fact of modern commercial life that a
substantial amount of business is transacted solely by mail and wire
communications across state lines, thus obviating the need for physical
presence within a State in which business is conducted.@).  To the contrary, Weber=s
constant stream of business activities directed at Texas and its residents is
sufficiently continuous and systematic to support general jurisdiction.  Weber=s Aongoing@ relationships with numerous Texas clients, involving daily
communications, goes far beyond the Amere purchases . . . at regular intervals@
the Supreme Court found insufficient to support general jurisdiction in Helicopteros Nacionales
de Columbia, S.A. v. Hall, 466 U.S. 408, 418, 104 S. Ct. 1868, 1874
(1984).  Furthermore, Weber=s
near-monthly visits to Texas for the express purpose of A[s]oliciting business@ and Aestablishing new clients@ demonstrate the type of purposefully directed conduct that
justify a conclusion that Weber could reasonably anticipate being called into a
Texas court.  Cf. Siskind v. Villa Found. for Educ.,
Inc., 642 S.W.2d 434, 436 (Tex. 1982) (concluding that solicitation of
business directed at Texas is a purposeful act committed in Texas).  Accordingly, we conclude that Weber=s
contacts with Texas are sufficiently continuous and systematic to support a
finding of general jurisdiction.

                                                  Fair
Play and Substantial Justice

Having
concluded that Weber has sufficient contacts with Texas to support
jurisdiction, we must next consider whether the exercise of personal
jurisdiction over Weber would offend traditional notions of fair play and
substantial justice.  See Guardian
Royal, 815 S.W.2d at 231.  The
following factors, when appropriate, should be considered: (1) the burden on
the defendant, (2) the interests of the forum state in adjudicating the
dispute, (3) the plaintiff=s interest in obtaining convenient and effective relief, (4)
the interstate judicial system=s interest in obtaining the most efficient resolution of
controversies, and (5) the shared interest of the several states in furthering
fundamental substantive social policies. 
Id.  Only in rare cases
will the exercise of jurisdiction not comport with fair play and substantial
justice when, as here, the nonresident defendant has purposefully established
minimum contacts with the forum.  Id.








Weber
claims that exercising jurisdiction in Texas would be unduly burdensome because
Weber=s
employees and managing directors are all located in Connecticut.  However, Weber admits that its employees
routinely travel to Texas on business. 
Weber presents no evidence that it would be unfair or unreasonable to
litigate Back-Haul=s claims in Texas.  Weber
claims that even though this dispute involves a Texas resident, Texas=s
interest in adjudicating this suit is limited because Aalmost
nothing happened in Texas.@  As we note above,
however, Weber=s alleged misrepresentation was purposefully directed into
Texas, where it was foreseeable that a Texas resident would rely on it.  Generally, Texas has a manifest interest in
providing its residents with a convenient forum for redressing injuries
inflicted by nonresidents.  See Burger
King, 471 U.S. at 473, 105 S. Ct. at 2182B83.  Weber has not
demonstrated that the interests of Connecticut or the shared interests of all
the states outweigh Texas=s substantial interest in providing convenient and effective
relief to its residents.  Accordingly, we
hold that the exercise of jurisdiction over Weber by a Texas court does not
offend traditional notions of fair play and substantial justice.

We
affirm the trial court=s order.

 

 

 

 

/s/        Leslie
Brock Yates

Justice

 

 

Judgment rendered and Opinion filed  December 12, 2002.

Panel consists of Justices Yates,
Anderson, and Hudson.

Do Not Publish C
Tex. R. App. P. 47.3(b).

 











[1]  A Adisponent owner@ does not hold legal title to a vessel, but possesses
the rights of ownership, usually under a separate agreement with the registered
owner.